# Illinois Official Reports

## Supreme Court

---

**People v. Davis, 2014 IL 115595**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ADDOLFO DAVIS, Appellee. |
| | |
| Docket No. | 115595 |
| | |
| Filed | March 20, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | It is not unconstitutional for a minor to be sentenced to a life term without parole so long as the sentence is at the trial court's discretion rather than mandatory—multiple murder case remanded for a new sentencing hearing considering all possible sentences. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Angela Munari Petrone, Judge, presiding. |
| | |
| Judgment | Affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People.

Marcella L. Lape, Brittany D. Parling and Shauna R. Prewitt, of Chicago, and Patricia Soung, of Los Angeles, California, for appellee.

Jocelyn D. Francoeur, Crystal L. Leighton and James P. Durkin, of McDermott Will & Emery LLP, of Chicago, for *amici curiae* Xavier McElrath-Bey *et al*.

Timothy P. O'Neill, of Chicago, for *amici curiae* Law Professors *et al*.

Tyrone Fahner, Marc Kadish, Daniel Storino and Michael Morrill (law intern), of Mayer Brown LLP, of Chicago, for *amici curiae* Retired Judges *et al*.

Megan Rodgers and Colleen E. Roh (*pro hac vice* pending), of Covington & Burling LLP, of Washington, D.C., for *amici curiae* American Correctional Chaplains Association *et al*.

Lawrence A. Wojcik and Eric M. Roberts, of DLA Piper LLP (US), of Chicago, for *amici curiae* Illinois Coalition for the Fair Sentencing of Children *et al*.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    The circuit court of Cook County denied defendant, Addolfo Davis, leave to file a successive petition for relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2010)). The appellate court affirmed the order of the circuit court in part and vacated in part. Relying on *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), the appellate court vacated defendant's sentence and remanded the cause to the circuit court for resentencing. 2012 IL App (1st) 112577-U. This court allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). We now affirm the judgment of the appellate

- 2 -

court.

I. BACKGROUND

The appellate court has previously recited the details of defendant's convictions and sentences. See, *e.g.*, *People v. Davis*, 388 Ill. App. 3d 869 (2009); *People v. Davis*, No. 1-93-1821 (1995) (unpublished order under Supreme Court Rule 23). We need not repeat those details here. Rather, we summarize the pertinent facts for purposes of the issues raised in this appeal.

On October 9, 1990, Bryant Johnson and Keith Whitfield were fatally shot. On October 11, defendant was arrested and questioned regarding his role in the shootings. Born on August 4, 1976, defendant was 14 years old when he was arrested. In January 1991, following a discretionary transfer hearing under the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, ¶ 805-4(3)(a)), the juvenile division of the circuit court of Cook County entered an order permitting defendant to be prosecuted under the criminal laws.

In February 1991, defendant was charged in a 31-count indictment for crimes relating to the shootings.[1] In March 1993, defendant was convicted of the first degree murders of Johnson and Whitfield, the attempted first degree murders of Melvin Harvey and Keith McGee, and home invasion. Defendant was sentenced in April 1993. Because defendant was found guilty of murdering more than one victim, section 5-8-1(a)(1)(c) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c) (West 1992)) required the trial court to sentence defendant to a term of natural life imprisonment, for which parole is not available (730 ILCS 5/3-3-3(d) (West 1992)). Defendant was also sentenced to 30 years' imprisonment for each count of attempted first degree murder and home invasion, all sentences to run concurrently. On direct review, the appellate court affirmed defendant's convictions and sentences. *People v. Davis*, No. 1-93-1821 (1995) (unpublished order under Supreme Court Rule 23), *appeal denied*, 165 Ill. 2d 556 (1996) (table).

In October 1996, defendant filed his first *pro se* postconviction petition, which the circuit court summarily dismissed in November 1996. In December 1996, defendant filed a second *pro se* postconviction petition with a motion for substitution of judge. In March 1997, the circuit court dismissed this petition. Defendant appealed from the dismissal of both the first and second postconviction petitions. The appellate court affirmed the circuit court's rulings. *People v. Davis*, No. 1-98-2277 (1999) (unpublished order under Supreme Court Rule 23), *appeal denied*, 185 Ill. 2d 639 (1999) (table). In November 1998, defendant filed his third *pro se* postconviction petition, which the circuit court dismissed. Defendant appealed and the appellate court affirmed the dismissal. *People v. Davis*, 1-99-0159 (1999) (unpublished order under Supreme Court Rule 23), *appeal denied*, 187 Ill. 2d 576 (2000) (table).

In September 2002, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2002)). The circuit court treated this petition as another postconviction petition and appointed counsel, who filed a supplemental petition. Relying on *People v. Miller*, 202 Ill. 2d 328 (2002) (hereinafter in text

---

[1]Two codefendants were separately indicted for their roles in the shootings. Defendant and codefendant Aaron Caffey were tried simultaneously with separate juries; codefendant Eugene Bowman received a separate bench trial.

*Leon Miller*), defendant argued that his natural life sentence was unconstitutional because he did not actually participate in the act of killing. Defendant obtained new counsel, who filed a second supplemental postconviction petition. Defendant argued that his sentence violated the eighth amendment to the United States Constitution and, further, that the statute requiring a mandatory life sentence violated the Illinois Constitution as applied to a 14-year-old defendant.

¶ 8 Following a hearing, the circuit court dismissed the petition in January 2007. The court found this case distinguishable from *Leon Miller*, where that defendant only acted as a lookout and did not enter the building where the actual murder occurred. In this case, the court found that defendant significantly participated in the murders: he actually went to the crime scene with his codefendants; he carried a weapon to the crime scene, which he perhaps dropped; and defendant actually entered the abode where the murders occurred. Defendant appealed, and the appellate court affirmed the dismissal. *People v. Davis*, 388 Ill. App. 3d 869 (2009), *appeal denied*, 233 Ill. 2d 571 (2009) (table), *cert. denied*, 130 S. Ct. 1707 (2010).

¶ 9 The instant appeal comes to us from defendant's "Motion For Leave To File A Verified Successive Post-Conviction Petition," which he filed in April 2011. Defendant made two claims: (1) his mandatory life sentence without parole violated the eighth amendment to the United States Constitution pursuant to *Graham v. Florida*, 560 U.S. 48 (2010); and (2) he received ineffective assistance of counsel at his juvenile transfer hearing because his counsel failed to interview an eyewitness prior to the hearing. In August 2011, the circuit court denied defendant leave to file the successive petition. First, the court noted *Graham*'s holding that a mandatory life sentence without parole could not be imposed on juvenile offenders who did not commit homicide. The court found that *Graham* did not apply to the instant case because defendant was convicted of two first degree murders, as well as two attempted murders and home invasion. Second, the court found that defendant received effective assistance of counsel at his juvenile transfer hearing.

¶ 10 While defendant's appeal was pending in the appellate court, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), in which the Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Id.* at ___, 132 U.S. at 2460. Defendant filed a substitute brief in the appellate court incorporating *Miller*. The appellate court concluded that *Miller* applies retroactively on postconviction review. Consequently, the appellate court vacated in part the circuit court's order denying leave to file a successive petition, vacated defendant's sentence, and remanded for a new sentencing hearing. However, the appellate court upheld the circuit court's denial of defendant's claim of ineffective assistance of counsel. 2012 IL App (1st) 112577-U.

¶ 11 The State appeals to this court. We granted leave to the following groups to file *amici curiae* briefs in support of defendant: Retired Judges *et al.*; Law Professors; Illinois Coalition for the Fair Sentencing of Children *et al.*; American Correctional Chaplains Association *et al.*; Amnesty International *et al.*; and Former Youthful Offenders. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additional pertinent background will be discussed in the context of our analysis of the issues.

## II. ANALYSIS

The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2012); *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not a substitute for a direct appeal, but rather is a collateral attack on a prior conviction and sentence. *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Tenner*, 206 Ill. 2d 381, 392 (2002). "The purpose of the post-conviction proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal." *People v. Towns*, 182 Ill. 2d 491, 502 (1998). Accordingly, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered forfeited. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009); *Pitsonbarger*, 205 Ill. 2d at 456, 458; see 725 ILCS 5/122-3 (West 2012) (stating that "[a]ny claim *** not raised in the original or an amended petition is waived").

Consistent with these principles, the Post-Conviction Hearing Act contemplates the filing of only one postconviction petition. 725 ILCS 5/122-1(f) (West 2012); *Ortiz*, 235 Ill. 2d at 328; *Pitsonbarger*, 205 Ill. 2d at 456. Consequently, a defendant faces immense procedural default hurdles when bringing a successive postconviction petition. Because successive petitions impede the finality of criminal litigation, these hurdles are lowered only in very limited circumstances. *Tenner*, 206 Ill. 2d at 392. One such basis for relaxing the bar against successive postconviction petitions is where a petitioner can establish "cause and prejudice" for the failure to raise the claim earlier. We observe that following *Pitsonbarger*, the General Assembly added section 122-1(f) to the Act, which codifies our cause-and-prejudice case law. *People v. Tidwell*, 236 Ill. 2d 150, 156 (2010); *Ortiz*, 235 Ill. 2d at 330. "Cause" refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding. "Prejudice" refers to a claimed constitutional error that so infected the entire trial that the resulting conviction or sentence violates due process. 725 ILCS 5/122-1(f) (West 2012); *Ortiz*, 235 Ill. 2d at 329; *Pitsonbarger*, 205 Ill. 2d at 460, 464. Both prongs must be satisfied for the defendant to prevail. *People v. Guerrero*, 2012 IL 112020, ¶ 15. It is within this procedural framework that we address the issues presented.

### A. Constitutionality of Sentence

The appellate court vacated defendant's sentence and remanded defendant's case to the circuit court for resentencing pursuant to principles articulated in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). The analyses of the lower courts, as well as the arguments of counsel before this court, require a thorough discussion of the controlling principles.

### 1. Eighth Amendment Principles

The eighth amendment prohibits, *inter alia*, the imposition of "cruel and unusual punishments," and applies to the States through the fourteenth amendment. *Roper v. Simmons*, 543 U.S. 551, 560 (2005) (collecting cases). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). The eighth amendment's ban on excessive sanctions flows from the basic principle that criminal punishment should be graduated and proportioned to both the offender and the offense. *Miller*, 567 U.S. at ___, 132

S. Ct. at 2463; *Roper*, 543 U.S. at 560. To determine whether a punishment is so disproportionate as to be "cruel and unusual," a court must look beyond history to "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality op.); see *Miller*, 567 U.S. at ___, 132 S. Ct. at 2463; *Graham*, 560 U.S. at 59; *Roper*, 543 U.S. at 561.

¶ 19 *Roper*, *Graham*, and *Miller* form a line of United States Supreme Court decisions that address how the eighth amendment's ban on "cruel and unusual punishments" applies to sentencing juveniles. The Court recognized three general differences between juveniles under 18 and adults. First, juveniles have a lack of maturity and an underdeveloped sense of responsibility. Second, juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. Third, the character of a juvenile is not as well formed as that of an adult. The Court concluded that these differences render the irresponsible conduct of juveniles not as morally reprehensible as that of an adult. *Graham*, 560 U.S. at 68; *Roper*, 543 U.S. at 569-70. In *Roper*, 543 U.S. at 578, the Court held: "The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." In *Graham*, 560 U.S. at 74, the Court held that the eighth amendment forbids the sentence of life without parole "for a juvenile offender who did not commit homicide." The Court further held that a "State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id.* at 82.

¶ 20 In *Miller*, the Court considered appeals by "two 14-year-old offenders *** convicted of murder and sentenced to life imprisonment without the possibility of parole. In neither case did the sentencing authority have any discretion to impose a different punishment." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. Relying on its earlier decisions in *Roper* and *Graham*, the Court in *Miller* recognized that "children are constitutionally different from adults for purposes of sentencing" (*id*. at ___, 132 S. Ct. at 2464), and that "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id*. at ___, 132 S. Ct. at 2468. The Court explained that a mandatory sentence precludes consideration of such mitigating circumstances as: the juvenile offender's age and its attendant characteristics; the juvenile's family and home environment and the circumstances of the offense, including the extent of the juvenile's participation therein and the effect of any familial or peer pressure; the juvenile's possible inability to interact with police officers or prosecutors, or incapacity to assist his or her own attorneys; and "the possibility of rehabilitation even when the circumstances most suggest it." *Id*. at ___, 132 S. Ct. at 2468.

¶ 21 Based on the above, the Court held:

> "[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id*. at ___, 132 S. Ct. at 2475.

Although the Court refused to declare categorically that a juvenile can *never* receive life imprisonment without parole for a homicide offense, the Court stated that "given all we have

- 6 -

said in *Roper*, *Graham*, and this decision ***, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id*. at ___, 132 S. Ct. at 2469.

¶ 22    Before this court, the State challenges the appellate court's retroactive application of *Miller v. Alabama* to defendant's postconviction proceeding. Defendant not only defends the appellate court's judgment, but, seeking cross-relief, further contends that *Miller* renders the statutory scheme under which he was convicted facially unconstitutional. We address defendant's contention first.

¶ 23                                        2. Facial Unconstitutionality

¶ 24    Defendant contends that *Miller* "renders the statutory scheme under which he was sentenced void." Therefore, according to defendant: his resulting sentence is void; he can raise this claim in this collateral proceeding; and he is entitled to a new sentencing hearing under the applicable sentencing provision as it existed prior to its allegedly unconstitutional form.

¶ 25    If a new constitutional rule renders a statute facially unconstitutional, the statute is void *ab initio*. *Lucien v. Briley*, 213 Ill. 2d 340, 344 (2004). When a court declares a statute unconstitutional and void *ab initio*, the court means only that the statute was constitutionally infirm from the moment of its enactment and, therefore, is unenforceable. *People v. Blair*, 2013 IL 114122, ¶ 30. A facial challenge to the constitutionality of a statute is the most difficult challenge to mount. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008); *People v. Greco*, 204 Ill. 2d 400, 407 (2003). A statute is facially unconstitutional only if there are no circumstances in which the statute could be validly applied. *Napleton*, 229 Ill. 2d at 306; *Lucien*, 213 Ill. 2d at 344. The fact that the statute could be found unconstitutional under some set of circumstances does not establish the facial invalidity of the statute. *In re Parentage of John M.*, 212 Ill. 2d 253, 269 (2004). Thus, a facial challenge must fail if any situation exists where the statute could be validly applied. *In re M.T.*, 221 Ill. 2d 517, 533 (2006) (and cases cited therein).

¶ 26    Further, a sentence that violates the constitution is void from its inception (*People v. Brown*, 225 Ill. 2d 188, 203 (2007)), and may be attacked at any time and in any court, either directly or collaterally. *People v. Thompson*, 209 Ill. 2d 19, 27 (2004). Whether a statute is unconstitutional is a question of law, which is reviewed *de novo*. *People v. Kitch*, 239 Ill. 2d 452, 466 (2011).

¶ 27    As earlier recited, defendant was sentenced pursuant to section 5-8-1(a)(1)(c) of the Unified Code of Corrections. When defendant was sentenced in April 1993, that section was codified in the Illinois Compiled Statutes in pertinent part: "(1) for first degree murder, *** (c) if the defendant *** (ii) is found guilty of murdering more than one victim *** the court *shall* sentence the defendant to a term of natural life imprisonment." (Emphasis added.) 730 ILCS 5/5-8-1(a)(1)(c) (West 1992). We observe that at the time of his offenses, that section provided in pertinent part: "(1) for first degree murder *** (c) if the defendant has previously been convicted of first degree murder under any state or federal law or is found guilty of murdering more than one victim, the court *shall* sentence the defendant to a term of natural life imprisonment." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-8-1(a)(1)(c). Subsection (c)'s provision of mandatory life imprisonment for multiple murders was added by Public Act 81-1118. Pub. Act 81-1118 (eff. July 1, 1980) (adding Ill. Rev. Stat. 1981, ch. 38, ¶ 1005-8-1(a)(1)(c)).

¶ 28    Defendant argues that subsection (c) is facially unconstitutional because under no circumstances does the statute permit a sentencer "to consider age and its relevant mitigating factors in compliance with *Miller*." According to defendant, he is entitled to be resentenced under section 5-8-1 as it existed prior to the addition of the mandatory life provision. See Ill. Rev. Stat. 1979, ch. 38, ¶ 1005-8-1. We disagree.

¶ 29    *Miller* itself expressly limited its prohibition of mandatory sentences of life without parole to juveniles. Explaining that "children are different" in terms of the eighth amendment, the Court observed that a sentencing rule that may be impermissible for children may be permissible for adults. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2470.

¶ 30    In the case at bar, the mandatory sentence of life without parole for defendants who commit multiple murders, as provided in section 5-8-1(a)(1)(c), can be validly applied to adults. Because there are situations where the statute can be validly applied, it is not facially unconstitutional. See, *e.g.*, *People v. Williams*, 2012 IL App (1st) 111145, ¶ 47.

¶ 31    However, defendant insists that this analysis fails to consider whether the applicable *statutory scheme*—which includes Illinois's juvenile transfer statute—is void *ab initio*. This argument lacks merit. As earlier recited, defendant received a juvenile transfer hearing pursuant to section 805-4(3) of the Juvenile Court Act of 1987, which provided in pertinent part:

> "(3)(a) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court *may* enter an order permitting prosecution under the criminal laws.
>
> (b) In making its determination on a motion to permit prosecution under the criminal laws, the court *shall* consider *among other matters*: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority; and (7) whether the minor possessed a deadly weapon when committing the alleged offense." (Emphases added.) Ill. Rev. Stat. 1989, ch. 37, ¶ 805-4.

¶ 32    This provision did not prohibit the circuit court from considering any and all relevant circumstances attendant to defendant's age, as required by *Miller*. Indeed, this provision *requires* such consideration. We hold that *Miller* did not render the statutory scheme under which defendant was sentenced facially unconstitutional. Since defendant fails in his facial challenge to the statutory scheme under which he was sentenced, we next consider whether *Miller* applies to defendant's mandatory sentence of life imprisonment without parole.

The State contends that *Miller* should not be retroactively applied to cases on collateral review. Employing the standards for such application as expressed in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality op.), the appellate court concluded that *Miller* must be applied retroactively to defendant's successive postconviction petition and ordered a new sentencing hearing. 2012 IL App (1st) 112577-U, ¶¶ 16-18. Indeed, we observe that several panels of our appellate court have concluded that *Miller* applies retroactively to cases on collateral review. See, *e.g.*, *People v. Williams*, 2012 IL App (1st) 111145; *People v. Morfin*, 2012 IL App (1st) 103568; *People v. Luciano*, 2013 IL App (2d) 110792; *People v. Johnson*, 2013 IL App (5th) 110112. We agree with this conclusion.

In *Teague*, the United States Supreme Court established standards for determining when a new constitutional rule would apply to federal *habeas corpus* actions pending in federal courts. In *People v. Flowers*, 138 Ill. 2d 218 (1990), this court acknowledged that *Teague* arose in the context of federal *habeas corpus*. However, this court considered the analysis enunciated therein "helpful and concise," and adopted it as a matter of state law for collateral proceedings pursuant to the Post-Conviction Hearing Act. *Id*. at 237-39.[2] The purpose of the *Teague* analysis is to promote the government's interest in finality of criminal convictions. " 'Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.' " *Id*. at 239 (quoting *Teague*, 489 U.S. at 309).

A judicial decision that establishes a new constitutional rule applies to all criminal cases pending on direct review. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *People v. Erickson*, 117 Ill. 2d 271, 288 (1987). However, as to convictions that are already final, the new rule is not to be applied retroactively to cases on collateral review except in two instances. First:

> "New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms [citations], as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish [citations]. Such rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal" ' or faces a punishment that the law cannot impose upon him." (Emphasis in original.) *Schriro*, 542 U.S. at 351-52 (and cases cited therein).

Second:

> "New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of

---

[2]We acknowledge that the United States Supreme Court has subsequently clarified *Teague*. First: "Since *Teague* is based on statutory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obligation on state courts." *Danforth v. Minnesota*, 552 U.S. 264, 278-79 (2008). Second, the *Teague* analysis "was meant to apply only to federal courts considering habeas corpus petitions challenging state-court criminal convictions." *Id.* at 279.

watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." (Internal quotation marks omitted.) *Id*. at 352.

In other words, the watershed rule of criminal procedure is a rule that is implicit in the concept of ordered liberty, without which the likelihood of an accurate conviction is seriously diminished. *People v. Sanders*, 238 Ill. 2d 391, 401 (2010); *People v. Morris*, 236 Ill. 2d 345, 359 (2010); see *Teague*, 489 U.S. at 311-13.

¶ 37     As the Court explained in *Schriro*, courts sometimes refer to constitutional determinations that place particular conduct or persons covered by the statute beyond the state's power to punish as an *exception* to *Teague*'s bar on retroactive application of procedural rules. However, "they are more accurately characterized as *substantive rules not subject to the bar*." (Emphasis added.) *Schriro*, 542 U.S. at 352 n.4. As noted, several panels of our appellate court have concluded that *Miller* applies retroactively to postconviction proceedings. However, those panels have differed in their application of the *Teague* analysis to *Miller*.

¶ 38     In the instant case, the appellate court relied on *Williams*, which concluded that *Miller* constitutes a watershed rule of criminal procedure, or requires the observance of those procedures that are implicit in the concept of ordered liberty. 2012 IL App (1st) 112577-U, ¶ 16 (quoting *People v. Williams*, 2012 IL App (1st) 111145, ¶¶ 51-52). In contrast, another panel of our appellate court concluded that *Miller* constituted a new substantive rule. See *People v. Morfin*, 2012 IL App (1st) 103568, ¶ 56. We observe that the special concurrence in *Morfin* opined that a new substantive rule is outside of the bar of *Teague* and concludes the analysis. *Id*. ¶¶ 62-68 (Sterba, J., specially concurring). We agree with the views expressed in *Morfin*.

¶ 39     In concluding that *Miller* constitutes a new substantive rule, the court in *Morfin* reasoned:

> "While [*Miller*] does not forbid a sentence of life imprisonment without parole for a minor, it does require Illinois courts to hold a sentencing hearing for every minor convicted of first degree murder at which a sentence other than natural life imprisonment must be available for consideration. *Miller* mandates a sentencing range broader than that provided by statute for minors convicted of first degree murder who could otherwise receive only natural life imprisonment." *Id*. ¶ 56.

As the Iowa Supreme Court recognized: "From a broad perspective, *Miller* does mandate a new procedure. Yet, the procedural rule for a hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing." *State v. Ragland*, 836 N.W.2d 107, 115 (Iowa 2013). In other words, *Miller* places a particular class of persons covered by the statute—juveniles—constitutionally beyond the State's power to punish with a particular category of punishment—*mandatory* sentences of natural life without parole. See *Miller*, 567 U.S. at ___, ___, 132 S. Ct. at 2464, 2468; *Diatchenko v. District Attorney for the Suffolk District*, 1 N.E.3d 270, 277 (Mass. 2013). Since *Miller* declares a new substantive rule, it applies retroactively without resort to *Teague*. See *Schriro*, 542 U.S. at 351-52 & n.4.

¶ 40     Also, we find it instructive that the *Miller* companion case, *Jackson v. Hobbs*, arose on state collateral review. Notwithstanding its finality, the Court retroactively applied *Miller* and vacated Jackson's sentence. While our analysis is independent as a matter of Illinois law, the relief granted to Jackson under *Miller* tends to indicate that *Miller* should apply retroactively on collateral review. See *People v. Williams*, 2012 IL App (1st) 111145, ¶ 54; *People v. Morfin*, 2012 IL App (1st) 103568, ¶ 57.

¶ 41      We observe that defendant and several *amici* assert that this court should depart from *Teague* and adopt a different rule of retroactivity. However, we do not rely on *Teague* in our analysis because we view *Miller* as a new substantive rule, which is outside of *Teague* rather than an exception thereto. Accordingly, we need not and do not address this argument. See *People v. Campa*, 217 Ill. 2d 243, 269-70 (2005) (reviewing court will not decide nonessential issues or render advisory opinions).

¶ 42      In terms of the requisite cause and prejudice of the Post-Conviction Hearing Act, *Miller*'s new substantive rule constitutes "cause" because it was not available earlier to counsel (*Pitsonbarger*, 205 Ill. 2d at 460-61), and constitutes prejudice because it retroactively applies to defendant's sentencing hearing. See 725 ILCS 5/122-1(f) (West 2012).

¶ 43      *Miller* holds that a *mandatory* life sentence for a juvenile violates the eighth amendment prohibition against cruel and unusual punishment. In the case at bar, defendant, a juvenile, was sentenced to a mandatory term of natural life without parole. Therefore, his sentence is invalid, and we uphold the appellate court's vacatur thereof. We observe that *Miller* does not invalidate the penalty of natural life without parole for multiple murderers, only its *mandatory* imposition on juveniles. See *People v. Luciano*, 2013 IL App (2d) 110792, ¶¶ 62-63. A minor may still be sentenced to natural life imprisonment without parole so long as the sentence is at the trial court's discretion rather than mandatory. See *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469; *Miller*, 202 Ill. 2d at 341; *People v. Johnson*, 2013 IL App (5th) 110112, ¶ 24. We remand for a new sentencing hearing, where the trial court may consider all permissible sentences.

¶ 44                          4. Illinois Constitution

¶ 45      Seeking cross-relief, defendant presents several additional contentions. Defendant contends that his mandatory sentence of life imprisonment without parole offends both the proportionate penalties clause and the due process clause of the Illinois Constitution. Ill. Const. 1970, art. I, §§ 2, 11. However, these contentions were raised and rejected previously. *People v. Davis*, No. 1-93-1821 (1995) (unpublished order under Supreme Court Rule 23); *People v. Davis*, 388 Ill. App. 3d 869 (2009). In support of these contentions, defendant relies on the Court's "reaffirmation of the special status of children" in *Graham* and *Miller*. However, in *Leon Miller*, this court expressly recognized the special status of juvenile offenders prior to *Roper*, *Graham*, and *Miller*. Nonetheless, this court concluded that such special status does not necessarily prohibit a sentence of natural life without parole where a juvenile offender actively participates in the planning of a crime that results in multiple murders. *Miller*, 202 Ill. 2d at 341-42. Accordingly, the rejection of this contention is *res judicata* and cannot be relitigated here. See, *e.g.*, *People v. Pulliam*, 206 Ill. 2d 218, 246-47 (2002); *People v. Neal*, 142 Ill. 2d 140, 146-47 (1990).

¶ 46            5. Defendant Did Not Kill or Intend to Kill

¶ 47      Regardless of whether defendant is entitled to a new sentencing hearing pursuant to *Miller*, defendant contends that this court "should make clear that his sentence is unconstitutional in any event under *Graham* \*\*\* because he did not kill or intend to kill." We reject this contention.

¶ 48      In *Graham*, the Court observed generally that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of

punishment than are murderers," and that homicide is distinguishable from other serious violent offenses against persons. *Graham*, 560 U.S. at 69. The Court reasoned: "It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis." *Id*. Therefore, the Court held that the eighth amendment forbids the sentence of life imprisonment without parole for a juvenile defendant who did not commit homicide. *Id*. at 74, 82.

¶ 49    By its own terms, *Graham* does not apply to the case at bar. Defendant was convicted of the first degree murder of two victims, and the attempted first degree murder of two additional victims. Thus, *Graham* does not categorically prohibit defendant from receiving a sentence of natural life when he is resentenced.

¶ 50    Defendant insists that, "even absent a categorical rule," his sentence of life imprisonment without parole is unconstitutional "in light of his young age and individual circumstances." However, defendant now will have the opportunity, for the first time, to present this exact argument at his new sentencing hearing. Therefore, we decline to address it.

¶ 51                                    B. Effective Assistance of Counsel

¶ 52    In addition to his claims pertaining to his sentence, defendant claims that he received ineffective assistance of counsel at his juvenile transfer hearing because his counsel failed to interview an eyewitness prior to the hearing. The circuit court denied leave to file this claim, and the appellate court upheld the denial. Our review is *de novo*. See *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998)).

¶ 53    Defendant attached the 2010 affidavit of Lamont Baxter to the instant successive postconviction petition. Prior to defendant's juvenile transfer hearing, Baxter testified before a grand jury regarding defendant's involvement in the crimes. The testimony was entered into evidence at defendant's juvenile transfer hearing. Baxter subsequently testified at defendant's trial. Before the grand jury, Baxter testified that defendant and his codefendants all possessed guns, and they all discussed whether they would kill everyone at the scene or allow one particular person to live. See *Davis*, 388 Ill. App. 3d at 872. However, in his affidavit, Baxter averred that he "did not see if [defendant] had a gun," and that "defendant was not part of that conversation, and he did not say a word." Baxter additionally averred that he "did not remember [defendant] saying anything during the incident. The whole time he looked like a scared kid being told what to do by [a codefendant, who] was the ringleader and was doing most of the talking." Also, Baxter "did not remember" being interviewed by defendant's lawyer prior to trial.

¶ 54    The appellate court correctly upheld the circuit court's denial of leave to file this claim. As this is defendant's fifth request for collateral review, the procedural default hurdles are "immense." See *Tenner*, 206 Ill. 2d at 392. In his first postconviction petition, defendant claimed that trial counsel was ineffective for not raising an insanity defense. In his second postconviction petition, defendant claimed that his trial and appellate counsel were ineffective. In his third postconviction petition, defendant claimed that trial counsel was ineffective for failing to produce exculpatory witnesses. *Davis*, 388 Ill. App. 3d at 875. The appellate court found that defendant "has failed to meet his burden of showing cause due to his failure to identify an objective factor that impeded his ability to raise his claim of ineffective assistance

of juvenile court counsel during his three prior postconviction petitions which asserted ineffective assistance of counsel." 2012 IL App (1st) 112577-U, ¶ 22.

¶ 55 Before this court, defendant argues that juvenile court counsel's deficient representation was not discovered until his current postconviction counsel spoke with Baxter in December 2010. We reject this argument. Defendant fails to explain why he was unable to discover this allegedly *new* evidence earlier, or raise this or a similar claim in *any* of his earlier postconviction proceedings. A defendant is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions, as defendant has attempted to do here. See *People v. Erickson*, 183 Ill. 2d 213, 226-27 (1998).

¶ 56 We hold that defendant has failed to establish "cause" for failing to raise this claim earlier. See 725 ILCS 5/122-1(f) (West 2012); *Pitsonbarger*, 205 Ill. 2d at 462-63. Baxter's affidavit testimony is not of such character that it could not have been discovered earlier by the exercise of due diligence. See *People v. Silagy*, 116 Ill. 2d 357, 368 (1987). As both prongs of the cause and prejudice test must be satisfied (*People v. Guerrero*, 2012 IL 112020, ¶ 15), defendant's claim is barred. We uphold the denial of leave to file this claim.

¶ 57                                III. CONCLUSION

¶ 58 For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 59 Affirmed.