2024 IL App (1st) 230048-U

No. 1-23-0048

Order filed September 25, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 13790 |
| | ) | |
| LEIVANTE ADAMS, | ) | Honorable |
| | ) | Stanley Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the trial court denying leave for defendant to file a successive petition for postconviction relief is affirmed.

¶ 2    Defendant Leivante Adams was convicted in 2004 of first degree murder and sentenced to a 45-year term of imprisonment. His conviction was affirmed on direct appeal, and he has since filed numerous pleadings pursuant to the Post-Conviction Hearing Act (the Act), 725 ILCS 5/122-1 *et seq.* (West 2018). Each of those efforts was unsuccessful in obtaining defendant a new trial.

On December 16, 2019, defendant filed a motion for leave to file a successive postconviction petition based on a claim that he was innocent of the crime. On December 2, 2022, the trial court denied defendant leave to file his successive petition. Defendant now appeals, arguing that he made a sufficient showing to be granted leave to file his successive petition.

¶ 3    For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 4                             I. BACKGROUND

¶ 5                        A. Trial and Direct Appeal

¶ 6    On July 1, 2003, the State charged defendant with the first degree murder of Raama Baker, alleging that he beat and killed Baker with a baseball bat. On December 18, 2006, this Court affirmed defendant's conviction and we summarize the pertinent trial evidence from that order. Larry Lewis and his girlfriend, Baker, went to the His and Hers Lounge every Thursday. On March 20, 2003, Lewis was at the lounge with Baker when he heard that Baker and defendant were outside fighting. Lewis went outside and saw defendant punching Baker in the face. Baker sustained injuries to her face.

¶ 7    On May 15, 2003, Terrence Whisby, defendant's brother, was at home with his girlfriend, Kim Washington, and his brother, Anthony Oliver. Defendant and the mother of his son, Toni Washington, were visiting. Around 11:30 p.m., Terrence heard arguing and found defendant and Baker outside, yelling at each other. A fight ensued and defendant repeatedly hit Baker with a stick he was holding. By the time Terrence pulled defendant away from Baker, she was lying on the ground motionless. Terrence acknowledged making multiple different statements to law

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

enforcement on May 19, 2003. In his final statement to officers and his grand jury testimony, he stated defendant hit Baker with a bat rather than a stick. He also claimed that unspecified officers threatened him and refused to let him leave the station until he provided a signed statement. They also told him that they would "plant something" on him or charge him with Baker's murder if he did not tell them what he knew. It was at that point that Terrence told police that defendant had killed Baker. Terrence also testified that, during his grand jury testimony, he said no promises or threats were made to get him to make a written statement about the murder.

¶ 8     Anthony testified at trial that on May 15, 2003, defendant left the house at 11 p.m., and returned saying that Baker "shouldn't be walking down the block." Anthony called the police, informing them that there had been a fight in the alley. He testified that he spoke to defendant the following day, but he could not recall the content of the conversation. However, during his grand jury testimony, he testified that defendant told him that "he snapped and starting hitting [Baker] with the bat" because he warned her not to walk down his street and because she called him a "bitch" and said she would walk wherever she wanted. During his grand jury testimony, he also testified that on May 15, 2003, he saw Baker lying on the ground and then saw defendant leave the scene in a car.

¶ 9     Kim testified that she saw Baker walking down the street and heard defendant give Baker a "warning" before following her with a bat in his hands. Kim went inside and heard a thump. When she went back outside, she saw Baker lying on the ground and defendant standing over her. Kim also testified that unspecified detectives told her that if she did not cooperate with them, they would charge Terrence and he would get "years." She later signed a statement that detectives provided to her in an effort to help Terrence. However, in her grand jury testimony, Kim testified

that she watched defendant grab a bat from inside the house and saw defendant hit Baker two or three times with the bat and that no one made any threats or promises to her to compel her testimony.

¶ 10    Barbara Oliver, defendant's mother, testified that around 11 p.m. on May 15, 2003, defendant entered her room and told her that Baker was on their block and that she was going to try to have him arrested. Barbara testified that she told defendant to leave the house, and that defendant got in his car and drove away. However, her grand jury testimony maintained that defendant was in his car, quickly entered the house, and then left again. Shortly after, she heard noises that sounded like someone being hit with a bat. She walked down the street and saw Baker lying on the ground. Defendant drove away but called his mother later that night to apologize. She also testified that Detective Robert Lenihan told her the only way they would release Terrence was if she came to the police station.

¶ 11    Toni testified that she and defendant were in defendant's car talking. When they saw Baker, defendant exited the car and talked to Baker in front of the house before walking down the street with her. After that, defendant drove away in his car and Toni drove home in her own car. When she returned to defendant's house, Terrence gave her defendant's gym bag, which contained a black garbage bag. Toni threw it away without looking inside it. However, Toni was impeached with her grand jury testimony in which she said that defendant and Baker argued before she saw defendant hit Baker with a bat six or seven times.

¶ 12    Toni testified that Lenihan threatened her when she was first interviewed and told her that if she did not cooperate, she would never see her son again. According to her, Lenihan gave her a

statement to read that was given by someone else, which she said was not correct. But Lenihan kept insisting that she cooperate and she finally assented.

¶ 13    During her grand jury testimony, Toni stated she saw defendant and Baker arguing, and that she saw defendant hit Baker with a bat six or seven times. Afterward, Terrence retrieved the bat, washed it off, and gave it to Toni, who threw it away. During her grand jury testimony, Toni stated no threats or promises had been made to her. But at trial, she testified that officers promised not to charge her and that she could see her son again if she cooperated. Toni's own attorney testified at trial that he accompanied her to her grand jury testimony, that no one from the State threatened Toni or mistreated her, and that he reached an arrangement with the State that Toni would not be charged with hiding the murder weapon if she told the truth.

¶ 14    Defendant testified that he and Baker previously had sexual relations, but denied ever being in a relationship with her or having a child with her. He admitted that the two of them got in a fight on March 20, 2003, and hit each other. However, he denied killing Baker or hitting her with a bat on May 15, 2003. He testified that he and Baker talked while walking down the street and, when they reached a vacant lot, he turned around and went home.

¶ 15    The jury found defendant guilty of first degree murder, and the trial court subsequently sentenced defendant to a prison term of 45 years. On December 18, 2006, this court affirmed defendant's conviction.

¶ 16                    B. Previous Postconviction Proceedings

¶ 17    On June 5, 2007, defendant filed a petition for postconviction relief alleging ineffective assistance of trial counsel for failing to introduce evidence that defendant was provoked and argue for second-degree murder and for failing to seek dismissal based on a violation of defendant's

speedy trial right. That petition was summarily dismissed on July 8, 2007. While that petition was pending, on June 28, 2007, defendant filed a supplement which alleged that he was subject to prosecutorial misconduct, the trial court abused its discretion in making certain evidentiary rulings, and that he was denied the effective assistance of trial and appellate counsel. The trial court treated defendant's filing as a supplemental filing, rather than a successive petition, and summarily dismissed it in a written order on August 13, 2007.

¶ 18 On January 20, 2010, defendant filed a petition for relief from judgment pursuant to 735 ILCS 5/2-1401 (West 2008). The trial court summarily dismissed that petition on March 10, 2010. This court affirmed that dismissal, but corrected defendant's mittimus to reflect 31 additional days that defendant spent in custody. *People v. Adams*, 2011 IL App (1st) 101034-U.

¶ 19 On February 7, 2011, defendant filed a motion for leave to file a successive postconviction petition, which alleged his actual innocence on the basis of three eyewitnesses, Bridgette Rush, Muhammad Williams, and Tijatta Williams, who all averred that they witnessed Baker's murder and that defendant was not the perpetrator. The trial court denied defendant leave to file his successive petition on March 18, 2011, and defendant appealed. While that appeal was pending, defendant continued to file additional postconviction pleadings.

¶ 20 On November 4, 2011, defendant filed another motion for leave to file a successive petition. That motion alleged defendant's actual innocence and that the State violated defendant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose forensic testing results from defendant's car. He also alleged that trial counsel was ineffective for failing to obtain these test results. Defendant attached the results of a Freedom of Information Act (FOIA) request sent to the Illinois State Police which stated that no records of forensic testing were located.

He also attached the affidavit of Daniyel Baker who averred knowledge that defendant's car was towed by Chicago police after the murder for the purpose of performing forensic testing. On December 9, 2011, the trial court denied defendant's motion for leave to file a successive petition, and we affirmed after giving appellate counsel leave to withdraw. *People v. Adams*, 2013 IL App (1st) 120213-U.

¶ 21    On May 3, 2012, defendant filed yet another motion for leave to file a successive petition for postconviction relief. That petition alleged that the State violated defendant's due process rights under *Brady* by failing to disclose forensic lab reports for a number of items including, but not limited to, a purse, a phone belt clip, a set of keys, a jacket, and swabs of stains taken at the scene of the murder. Defendant claimed he obtained the reports via a FOIA request and that the suppressed evidence undermined confidence in the outcome of his trial. Defendant also claimed that the State committed prosecutorial misconduct and that he received ineffective assistance of trial counsel for failing to uncover the allegedly suppressed forensic reports and obtain expert assistance in analyzing the items in question. On June 14, 2012, defendant filed a supplement to his motion for leave to file, claiming that forensic testing of the interior of defendant's Lexus yielded no evidence of blood, further pointing to his innocence. He also claimed that the State violated his due process rights by failing to disclose this information and that trial counsel provided ineffective assistance for failing to uncover the forensic testing of defendant's car. The trial court denied defendant leave to file on June 22, 2012, and defendant appealed. This court allowed appellate counsel leave to withdraw and affirmed the judgment of the trial court on August 22, 2014. *People v. Adams*, 2014 IL App (1st) 122315-U.

¶ 22    On August 23, 2013, this court reversed the denial of leave to file the successive petition regarding the affidavits of the three eyewitnesses who claimed defendant was not the perpetrator and remanded for further proceedings. *People v. Adams*, 2013 IL App (1st) 111081, ¶ 1. That petition proceeded to a third-stage evidentiary hearing in May 2016. On November 10, 2016, the trial court denied defendant's petition for postconviction relief, and found that the testimony of Bridgette Rush, Muhammad Williams, and Tijatta Williams was not credible or believable. *People v. Adams*, 2019 IL App (1st) 163168-U, ¶ 44. On August 16, 2019, we affirmed the trial court's judgment. *Id*. ¶ 59. Defendant petitioned the Illinois supreme court for leave to appeal, which was denied on November 26, 2019. *People v. Adams*, 135 N. E. 3d 574 (Table).

¶ 23    While that petition for leave to appeal was pending, defendant filed another motion for leave to file a successive petition for postconviction relief on October 1, 2019. Defendant alleged that his arrest was unconstitutional because it was based on an investigative alert. On July 23, 2020, the trial court denied defendant's motion. On November 4, 2021, this court allowed appellate counsel leave to withdraw and affirmed the judgment of the trial court in a summary order.

¶ 24              C. Instant Successive Postconviction Proceedings

¶ 25    On December 16, 2019, defendant filed a document styled as a "supplemental successive postconviction petition." In it, defendant sought leave to file a successive petition alleging his actual innocence. Defendant claimed that newly discovered evidence showed that Detectives Lenihan, Robert Bartik, and Dolores Myles had "employed fabrication, coercion, threats, and intimidation" in other cases, which supported the claims of the State's witnesses that they had been coerced into identifying defendant as the perpetrator. Defendant's motion contained specific

allegations about Lenihan's conduct, but made no specific allegations about the conduct of Bartik or Myles.

¶ 26    On January 18, 2022, after retaining counsel, defendant filed a supplement to his motion for leave to file a successive petition. Like defendant's *pro se* motion, the supplement made no specific allegations about the conduct of Bartik or Myles in this case. It also realleged defendant's actual innocence based on the notion that the detectives involved in his case coerced witnesses into identifying defendant as the perpetrator. The supplement incorporated exhibits defendant attached to his original motion, as well as numerous additional documents, which the trial court thoroughly summarized in its written order. Given our ultimate disposition, we need not summarize these exhibits in great detail.

¶ 27    Regarding Detective Myles and Detective Bartik, defendant's pleadings referenced multiple lawsuits or published opinions containing various allegations of misconduct against both. However, as we have noted, neither of defendant's pleadings made any factual allegations about the specific conduct of these individuals in defendant's case.

¶ 28    As for Detective Lenihan, defendant's exhibits detailed multiple lawsuits against him alleging conduct such as fabricating evidence, coercing false confessions, threatening witnesses, and withholding exculpatory evidence. All but a handful of the lawsuits or opinions attached to defendant's pleadings became available between 2003 and 2018, before defendant's prior postconviction proceedings. The remaining documents became available in 2020, but none of them involved allegations against Lenihan, although he was involved in some of the underlying investigations.

¶ 29 On December 2, 2022, the trial court denied defendant leave to file his successive petition in an extensive written order. The trial court first observed that defendant's claim, though framed as an actual innocence claim, was instead a claim of a due process violation based on the State's use of allegedly false testimony and police misconduct. The trial court found that defendant could not establish cause because defendant's attached evidence was not newly discovered, and he could not establish prejudice because the new evidence was not so conclusive that it would probably change the result. The trial court also found that defendant's claim could not be considered as an actual innocence claim because it was not free standing. In any event, the trial court observed that defendant's evidence was not newly discovered, immaterial, and not conclusive. Accordingly, the trial court denied defendant leave to file a successive postconviction petition.

¶ 30                                              II. ANALYSIS

¶ 31 Defendant argues both that he: (1) established cause and prejudice to be permitted to file his successive postconviction petition arguing that the State violated his due process rights by using false testimony at trial, and (2) established a colorable claim of actual innocence. We address both of these issues in turn.

¶ 32 The Act provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq.* (West 2018). Issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered forfeited. *People v. Davis*, 2014 IL 115595, ¶ 13. The Act contemplates filing only one petition for postconviction relief, but the trial court may allow successive petitions upon

a showing of cause and prejudice. *Davis*, 2014 IL 115595 at ¶ 14. A defendant faces immense procedural hurdles when bringing a successive postconviction petition and, because successive petitions impede the finality of criminal litigation, these hurdles are lowered only in very limited circumstances. *Id*. One basis for relaxing these hurdles is where a defendant can establish both cause and prejudice for the failure to raise the claim in his initial postconviction petition.

¶ 33    "Cause" refers to some objective factor that impeded the defendant's ability to raise the claim in an earlier proceeding, while "prejudice" refers to a constitutional error that so infected the entire trial that the resulting conviction or sentence violates due process. *Davis*, 2014 IL 115595 at ¶ 14; 725 ILCS 5/122-1(f) (West 2018). To meet the cause-and-prejudice test for successive petitions, a defendant must "submit enough in the way of documentation to allow a circuit court to make that determination." *People v. Smith*, 2014 IL 115946, ¶ 35. When a claim of prejudice rests on new evidence, the defendant must show that his supporting evidence is of such conclusive character that it will probably change the result upon retrial. *People v. Jackson*, 2021 IL 124818, ¶ 31.

¶ 34    The initial cause-and-prejudice determination is made on the pleadings rather than from an evidentiary hearing, and a defendant need not establish cause and prejudice conclusively in order to be granted leave to file a successive petition for post-conviction relief. *Bailey*, 2017 IL 121450 at ¶¶ 22-25. Instead, a defendant must only make a *prima facie* showing of cause and prejudice. *Id*. at ¶ 24.

¶ 35    The cause-and-prejudice test is a higher standard than the "frivolous or patently without merit" standard that the trial court employs during first stage proceedings. *Smith*, 2014 IL 115946 at ¶ 35; 725 ILCS 5/122-2.1(a)(2). Leave of court to file a successive post-conviction petition

should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. *Smith*, 2014 IL 115946 at ¶ 35.

¶ 36     Alternatively, when a defendant seeks leave to file a successive postconviction petition based on a freestanding claim of actual innocence, he must present new, material, noncumulative evidence that is so conclusive that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. New evidence means the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence. *Id*. Material means the evidence is relevant and probative of the defendant's innocence. *Id*. Noncumulative means the evidence adds to what the jury heard. *Id*. And conclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result. *Id*. Whether leave should be granted to file a successive petition is reviewed *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 37     We turn first to defendant's claim on appeal that he sufficiently established cause and prejudice to be granted leave to file a successive petition alleging that the State violated his due process rights by presenting false testimony. Although defendant's motion and the additional supplement frame defendant's false testimony and "pattern and practice" claim as an actual innocence claim, we note that the trial court analyzed defendant's pleading under both the cause-and-prejudice test, as well as the relevant test for actual innocence claims. This is because, "It is well settled that 'the use of false testimony underlying a conviction is a due process violation' " *People v. Martinez*, 2021 IL App (1st) 190490, ¶ 61 (quoting *People v. Washington*, 171 Ill. 2d

475, 487 (1996)). Furthermore, due process claims based on false testimony are "fundamentally different" from actual innocence claims. *Washington*, 171 Ill. 2d at 487.

¶ 38    However, the State claims that neither defendant's instant motion for leave to file a successive petition, nor the supplement filed by counsel, pled the requisite cause and prejudice required by the Act. 725 ILCS 5/122-1(f) (West 2018). A claim not raised in the underlying pleading generally cannot be raised for the first time on appeal. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006) (citing *People v. Jones*, 213 Ill. 2d 498, 505 (2004); see also 725 ILCS 5/122-3 (West 2018). Although waiver and forfeiture are bars on the parties and not the courts, such a principle "should not be a catchall that confers upon reviewing courts unfettered authority to consider issues at will." *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 29 (quoting *Jackson v. Board of Election Com'rs of City of Chicago*, 2012 IL 111928, ¶ 33).

¶ 39    Defendant concedes that cause and prejudice was not alleged below. However, he nevertheless urges us to consider the argument as it is based on the trial court's ruling and facts available in the record. While it is true that the trial court performed a cause-and-prejudice analysis below, the fact that the trial court considered the issue does not create allegations of cause out of thin air. We review the sufficiency of a motion for leave to file a successive petition *de novo*; the analysis of the trial court is not at issue. *Bailey*, 2017 IL 121450, ¶ 13. In this instance, we cannot entertain defendant's argument that is raised for the first time on appeal, particularly because defendant's claim that the argument is based on the record is simply untrue. Instead, defendant's cause argument entails several pages of briefing exclusively referencing facts outside the record. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009) (parties generally may not rely on matters outside the record, and when a party's brief fails to comply with a rule, a court of review may

strike the brief or disregard the inappropriate material). For example, defendant's brief claims that many of the documents necessary for defendant's claims were not publicly available and were only discovered by counsel through the use of the United States Courts' Public Access to Court Electronic Records (PACER) system. But nothing in the record substantiates this, even on a *prima facie* basis, because this issue was not pled below—even after counsel took over defendant's representation. Likewise, defendant also argues that his ability to investigate his claims continues to be impeded "due to the unavailability of the unredacted police reports" and admits that these reports have not been included in the record on appeal. This claim is also entirely outside the record and unverifiable—we do not even know what police reports defendant is referencing. Defendant's pleadings offer nothing in the way of objective reasons that he could not bring this claim earlier other than conclusory statements that his attached exhibits were newly discovered. Defendant is not simply asking us to consider an argument for the first time on appeal; he asks us to substitute factual allegations contained in his brief that are outside the record for the allegations missing from the pleadings. We decline to do so. The cause-and-prejudice determination is meant to be made on the pleadings and supporting documentation submitted to the trial court. *Bailey*, 2017 IL 121450, ¶ 24. Even assuming that such allegations could establish cause, the pleadings are devoid of any allegations that could make the requisite *prima* facie showing of cause.

¶ 40    As a result, we decline to consider defendant's argument now raised for the first time on appeal. Because defendant cannot demonstrate cause, we need not analyze whether he demonstrated prejudice. Accordingly, the trial court did not err on this issue in denying defendant leave to file his successive petition on this basis.

¶ 41 That brings us to defendant's second argument on appeal: that he demonstrated a colorable claim of actual innocence. When a defendant raises an actual innocence claim in a successive postconviction petition, the trial court should deny leave only where, as a matter of law, no colorable claim of actual innocence has been presented. *People v. Taliani*, 2021 IL 125891, ¶ 52. A free standing actual innocence claim is an extraordinary remedy that challenges a conviction "based on principles of fundamental fairness and borne out of our constitutional obligation to afford a person who presents new evidence that persuasively indicates that he or she is factually innocent with the additional process necessary to prevent a fundamental miscarriage of justice." *Id*. ¶ 67.

¶ 42 In *Washington*, our supreme court recognized for the first time that a defendant may present a free standing actual innocence claim as a matter of due process. *Washington*, 171 Ill. 2d at 487-89. There, the court held that an actual innocence claim "is not being used to supplement an assertion of a constitutional violation with respect to his trial." *Id*. at 479.

¶ 43 Our supreme court subsequently decided *People v. Hobley*, 182 Ill. 2d 404 (1998). Whereas *Washington* observed that a free standing claim of actual innocence does not rely on an assertion of a constitutional violation, *Hobley* instead held that a free standing innocence claim could not entail using new evidence to supplement claims of constitutional violations. *Id*. at 444.

¶ 44 This court recently criticized *Hobley* in *Martinez*, claiming that it "deviated from both the spirit and the letter of the law as set forth in *Washington*," and that "*Hobley* identified no principle or purpose that would be furthered by prohibiting a defendant from using the same evidence to assert both a constitutional claim of trial error and an actual innocence claim." *Martinez*, 2021 IL App (1st) 190490, ¶ 102. However, *Martinez* did acknowledge a possible purpose for the so-called

*Hobley* rule—preventing a defendant from circumventing the cause-and-prejudice test by asserting an actual innocence claim instead of a constitutional claim. *Id*. ¶ 103.

¶ 45    After *Martinez* was decided, our supreme court decided *Taliani*. While *Taliani* did not specifically address *Martinez*, it did reiterate that a free standing claim of actual innocence "is one in which newly discovered evidence is not being used to supplement an assertion of a constitutional violation with respect to the defendant's trial or that the evidence at trial was insufficient to convict the defendant beyond a reasonable doubt." *Taliani*, 2021 IL 125891, ¶ 56. Instead, it said that a " 'free standing' claim of actual innocence is one in which newly discovered evidence makes a persuasive showing that the [defendant] did not commit the charged offense, and was, therefore, wrongfully convicted." *Id*. We need not take a position on *Martinez*'s criticism of *Hobley* because we are bound to follow *Taliani* and its recitation of what constitutes a free standing innocence claim.

¶ 46    In this case, we need look no further for an example of a free standing actual innocence claim than defendant's own prior postconviction proceedings that culminated in an evidentiary hearing. There, he presented witnesses who testified that the perpetrator was, in fact, not defendant. But the claim defendant makes now, as the trial court correctly noted, is not free standing. None of the evidence now being presented affirmatively shows that defendant did not commit the charged offense. Instead, it is being used "to supplement an assertion of a constitutional violation" and argue that "the evidence at trial was insufficient to convict the defendant beyond a reasonable doubt." *Id*. Any allegations of prior misconduct by the officers in defendant's case do not show that defendant was actually innocent. They would only theoretically support defendant's claim that the State used false testimony against defendant at trial—a due process claim we have already

addressed above and for which defendant could not establish cause for failing to raise it earlier. Because defendant's claim is not free standing and is functionally a due process claim that the State convicted him using false testimony, we need not analyze further whether defendant's evidence is newly discovered, material, or conclusive.

¶ 47    Accordingly, the trial court did not err in denying defendant leave to file a successive petition on this basis. Given our resolution of these two issues, we need not consider defendant's argument that this case should be assigned to a different trial court judge upon remand.

¶ 48    Finally, though it has no bearing on our decision, we make a brief comment on the State's argument that defendant's brief failed to comply with Supreme Court Rule 341(h)(6), which requires briefs to include a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Not only did defendant's brief not include many basic facts about defendant's crime, underlying trial, conviction, and prior postconviction proceedings, which provide essential context, but this was done intentionally. Defendant's brief explicitly states that these facts were omitted to "leave room to fully articulate his arguments on this appeal," even though he used only 31 of the maximum of 50 pages allowed by the rule. Ill. S. Ct. R. 341(b)(1) (eff. Oct. 1, 2020). Whatever the real reason that these facts were omitted from defendant's brief, we reiterate that our rules are not suggestions; they are mandatory. *Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748, ¶ 21.

¶ 49                                III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 51    Affirmed.