2020 IL App (1st) 181062-U

No. 1-18-1062

Order filed September 11, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 5536 |
| | ) | |
| DENNIS ALLEN, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The summary dismissal of defendant's *pro se* postconviction petition is affirmed because it failed to make an arguable claim of ineffective assistance of counsel.

¶ 2    Defendant Dennis Allen appeals from the circuit court's summary dismissal of his *pro se* petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that this court should remand for further proceedings because he raised an arguable claim that he was denied the effective assistance of

counsel based on trial counsel's failure to present character witnesses who would have testified to his "reputation for morality and chastity." We affirm.

¶ 3    Following a jury trial, defendant was found guilty of three counts of predatory criminal sexual assault of a child and was sentenced to mandatory life imprisonment. See 720 ILCS 5/12-14.1(a)(1), (b)(1.2) (West Supp. 2011). The underlying facts were fully set forth in our order on direct appeal. See *People v. Allen*, 2016 IL App (1st) 142135-U. Therefore, we will only recite those facts necessary to the disposition of this appeal.[1]

¶ 4    Defendant was arrested based on incidents involving two minors, R.G. and A.G. Following a pretrial hearing, the court granted the State's motion to admit certain hearsay statements of the minors into evidence pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2014)).

¶ 5    Defendant's answer to the State's motion for pretrial discovery listed four potential witnesses: Vincent Appleton, Vishon Appleton, Makil Appleton, and Angela Bullock.[2] The State then filed a motion *in limine* seeking, in pertinent part, to bar those witnesses from testifying unless defendant first provided the trial court with a proffer of their proposed testimony, as "[n]one of the named witnesses are occurrence witnesses." At the hearing on the State's motion, trial counsel stated that the answer to discovery identified "some" character witnesses, but that "after talking to [defendant] about it, we have decided that we are not going to be calling any character witnesses in this case."

---

[1] The trial transcript is missing pages throughout. However, these missing pages do not prevent the court from fully addressing the merits of defendant's particular contention in this appeal.

[2] In defendant's answer to discovery, the witnesses' names were set forth in a handwritten addition to typed text. As the handwriting is unclear, we use an approximation of the spelling.

¶ 6    At trial, Jetty G., the victims' adoptive mother, testified that in February 2011, R.G. and A.G. were under 13 years of age. Jetty rented rooms in her home, and defendant worked as a caregiver for Eugene Cornelius, one of her tenants. Previously, defendant had also rented a room. Although defendant's duties did not include interacting with Jetty's children, defendant wanted to be their father figure. There were five children in the home, but defendant specifically bought things for R.G. and A.G. and took them on outings. When R.G. and A.G. came home from school, Jetty would be at work and defendant would be present. She told defendant four or five times not to enter the boys' bedroom.

¶ 7    Between 1 and 2 a.m. on February 25, 2011, Jetty woke to her adult daughter Cynthia G. screaming. When Jetty went downstairs to the living room, where R.G. had been sleeping due to home renovations, Cynthia was threatening defendant with an iron. Defendant said he "didn't do it."

¶ 8    Cynthia testified that defendant asked to spend the night on February 24, 2011 because Cornelius had a medical appointment early the next morning. At one point, Cynthia woke to make a snack. She then saw R.G. "thrown" onto an air mattress by defendant. Cynthia told defendant she "caught" him and told Jetty that defendant was "messing around" with her younger brother. Although defendant stated that R.G. was "sleep[ing] wild," Cynthia did not believe him.

¶ 9    R.G. testified that he was born on June 13, 2000, and lived with Jetty since he was four years old. He met defendant when he was seven years old. Defendant took R.G. and A.G. shopping, and to movies and restaurants. On the night of February 24, 2011, R.G. slept on an air mattress in the living room and defendant slept on a pallet beside him. At one point, R.G. was

pulled off the air mattress and felt a "heavy person" on top of him. He then heard the sound of popcorn and saw a light turn on. Defendant threw him back on the air mattress and R.G. heard Cynthia "cursing out" defendant. The next morning, R.G. went to the hospital and spoke to police officers.

¶ 10    R.G. further testified that when he was about nine years old, he and A.G. were in their bedroom when defendant entered, said it was "time to play," removed his penis from his pants, and tried to make them suck it. Although both boys resisted, defendant's penis touched each one's face. R.G. next described an incident in which defendant performed oral sex on R.G. and A.G. Defendant took them to their bedroom and locked the door. Defendant first went to A.G., pulled down his clothing, and began sucking his penis. Defendant then went to R.G. and began sucking R.G.'s penis. After about 10 seconds, R.G. "peed" in defendant's mouth. Defendant said he was going to "whoop" R.G., but the doorbell rang, so defendant went to answer the door.

¶ 11    When the State asked R.G. whether defendant touched R.G.'s penis "one time or more than one time," R.G. said it was only once. The State then asked whether defendant made R.G. put his mouth on defendant's penis "one time or more than one time," and R.G. answered, "Twice." R.G. later reiterated that defendant made him put his mouth on defendant's penis on another occasion. R.G. did not tell anyone what happened because he was afraid he would be taken away from Jetty.

¶ 12    A.G. testified that he was born on July 18, 1998. He slept in Jetty's room on the night of February 24, 2011, because he "didn't have time for [defendant] to be playing and feeling on me." In the middle of the night, A.G. heard Jetty run downstairs and Cynthia's voice. When he went to the stairs, he saw Cynthia holding an iron and Jetty trying to find out what had happened.

A.G. returned to Jetty's room and began crying because he "was happy that [defendant] had got caught."

¶ 13    A.G. then testified that when he was 12 years old, he and R.G. were in their bedroom and defendant tried to make them suck his penis. On another occasion, A.G. was in his room when defendant entered and tried to put his penis in A.G.'s mouth. R.G. ran into the room, but defendant forced R.G. out and locked the door. A.G. then told defendant that he did not want to do "this" anymore. After this point, defendant "turned all his attention" to R.G. A.G. initially testified that he did not see defendant put his penis in R.G.'s mouth, but later admitted to being present when defendant put his mouth on R.G.'s penis and R.G. "peed" into defendant's mouth. A.G. never told anyone because he was afraid that he would be removed from Jetty's home.

¶ 14    Lynn Aladeen, a forensic interviewer with the Chicago Children's Advocacy Center, testified that she interviewed R.G. and A.G. on March 14, 2011. During R.G.'s interview, he stated, in pertinent part, that "the man" came into his bedroom and sucked his penis. Another time, the man sucked R.G.'s penis in the living room, and R.G. saw the man suck A.G.'s penis in a bedroom. R.G. stated these incidents began when he was about eight years old, and the last occurred around two weeks prior to the interview. R.G. also stated the man tried to make him and A.G. suck the man's penis.

¶ 15    During A.G.'s interview, he stated that his first "encounter" took place just before he turned 11 years old when "the man made him and [R.G.] suck the man's penis." A.G. then described "a few different incidents," including one where "the man made A.G. suck his penis," and another where "the man tried to make [A.G.] and [R.G.] suck his penis." A.G. also stated that the man made R.G. watch A.G. suck the man's penis.

¶ 16    Defendant testified and denied any inappropriate contact with R.G. and A.G. He confirmed that he was 47 years old on February 24, 2011, and that he spent the night at Jetty's home so that he could prepare Cornelius for an early morning medical appointment. Defendant woke during the night to the smell of popcorn and noticed R.G.'s head on his arm. He then moved R.G., getting onto the air mattress in the process. At this point, Cynthia started yelling at him.

¶ 17    The jury found defendant guilty of three counts of predatory criminal sexual assault for contact between defendant's penis and R.G.'s mouth, defendant's mouth and R.G.'s penis, and defendant's mouth and A.G.'s penis. The circuit court imposed the statutorily mandated sentence of natural life imprisonment. See 720 ILCS 5/12-14.1(b)(1.2) (West Supp. 2011).

¶ 18    On direct appeal, defendant contended that (1) there was insufficient evidence to support his conviction for contact between his penis and R.G.'s mouth, or in the alternative, that he was entitled to a new trial because the evidence supporting this conviction was inadmissible; (2) he was denied effective assistance by counsel's failure to object to allegedly inadmissible or nonexistent evidence of contact between defendant's mouth and A.G.'s penis; and (3) the State committed various instances of misconduct. We affirmed. *People v. Allen*, 2016 IL App (1st) 142135-U.

¶ 19    On October 17, 2017, defendant filed a *pro se* postconviction petition alleging he was denied the effective assistance of counsel when, "on the day of trial in [the] courtroom," trial counsel advised that he would not call any witnesses although their testimony could have made a

"big empact [*sic*]" on establishing defendant's innocence. Attached to the petition were the affidavits of defendant's brother Tony Allen[3] and sister-in-law Patricia Ann Brown.

¶ 20    Tony stated that he loved defendant, did not know what happened in connection with the charges, and that defendant, who was a churchgoer, did not "do these things that was [said] about him." Tony further stated that "we got boys and girl cousin[s] and everything we talk to them [about] they say no way." Tony also stated that he did not know what the charges were, but "hope[d] and pray[ed]" that defendant did not do "this." Tony finally stated that defendant was a good man and the "things that been [said] are not true."

¶ 21    Brown stated that although she did not know what happened, defendant was "not what people are saying"; rather, he was quiet and "all about kids." Brown further stated that she prayed that defendant was innocent and that "everyone will know what happen[ed] when court is ran right" and "the right people [are] in court." Brown finally stated that the case should be put in God's hand, she thought that defendant was innocent, and the proceedings should be examined again.

¶ 22    On December 21, 2017, the circuit court summarily dismissed the *pro se* petition as frivolous and patently without merit in a written order. The court noted that defendant's sole claim for postconviction relief was that he was denied effective assistance by trial counsel's failure to present witnesses who could have impacted the trial, but he failed to identify the potential witnesses. Rather, defendant attached affidavits from his brother and sister-in-law vouching for his character. The court concluded that the "barebones" and conclusory allegation in defendant's petition failed to set forth a claim of ineffective assistance. Moreover, both

---

[3] For clarity, we refer to Tony Allen by his first name.

affiants admitted they did not know what happened and failed to "shed new light as to the merits of the case." On June 8, 2018, this court granted defendant leave to file a late notice of appeal.

¶ 23    On appeal, defendant contends that the circuit court erred in summarily dismissing his petition because he presented an arguable claim that trial counsel was ineffective when he failed to present character witnesses at trial in order to establish defendant's reputation for chastity, support defendant's testimony that he was innocent, and undermine the State's case. He argues that a defendant's reputation for morality and chastity is relevant in a prosecution for criminal sexual abuse and notes that his petition included affidavits from two potential character witnesses.

¶ 24    The Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq*. (West 2016). A proceeding initiated under the Act is "not a substitute for a direct appeal, but rather is a collateral attack on a prior conviction and sentence." *People v. Davis*, 2014 IL 115595, ¶ 13. The Act allows inquiry into constitutional issues arising in the original proceeding that were not raised and could not have been adjudicated on direct appeal. *Id*. Issues raised and decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.*

¶ 25    At the first stage of proceedings under the Act, a defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable

basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Fanciful factual allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id.* at 16-17.

¶ 26    Because most petitions are drafted at the first stage by *pro se* defendants, the threshold for a petition to survive the first stage of postconviction review is low. *People v. Allen*, 2015 IL 113135, ¶ 24. This low threshold, however, "does not excuse the *pro se* [defendant] from providing factual support for his claims; he must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Id.* (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). We review the dismissal of a first stage postconviction petition *de novo*. *Allen*, 2015 IL 113135, ¶ 19.

¶ 27    When considering a claim of ineffective assistance of trial counsel at the first stage of postconviction proceedings, the defendant must show both that counsel's performance was arguably deficient, and that the defendant was arguably prejudiced by counsel's deficient performance. *Hodges*, 234 Ill. 2d at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

¶ 28    Generally, decisions about which witnesses to call at trial and what evidence to present are matters of trial strategy and are immune from claims of ineffective assistance of counsel. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. "A defendant may overcome the strong presumption that defense counsel's choice of strategy was sound if counsel's decision appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." (Emphasis and internal quotation marks omitted).

*Id.* ¶ 81. An exception to the general rule exists for those cases when trial counsel's chosen strategy is so unsound that counsel failed to conduct any meaningful adversarial testing. *People v. West*, 187 Ill. 2d 418, 432 (1999).

¶ 29 On appeal, defendant contends that it was unreasonable for trial counsel not to present witnesses who would testify to his reputation for morality and chastity in order to support his testimony that he was innocent and to undermine the State's case. The question before this court is therefore whether the petition met the low standard applied to *pro se* defendants at the first stage of proceedings under the Act such that the circuit court erred in summarily dismissing it as frivolous and patently without merit.

¶ 30 A postconviction petition "cannot consist of nonfactual and nonspecific assertions that merely amount to conclusions that errors occurred at trial. [Citations.] Rather, a petition filed under the Act must 'clearly set forth the respects in which petitioner's constitutional rights were violated.' " *Wilborn*, 2011 IL App (1st) 092802, ¶ 54 (quoting 725 ILCS 5/122-2 (West 2008)). Unsupported allegations of ineffective assistance are insufficient to avoid first-stage dismissal. See *People v. Ivy*, 313 Ill. App. 3d 1011, 1019 (2000) ("the postconviction petition stated mere conclusory allegations without factual support that appellate counsel was ineffective for failing to challenge the denial of [the defendant's] motion to withdraw his guilty plea").

¶ 31 We find that the circuit court did not err in summarily dismissing defendant's petition because he failed to support his allegations of ineffective assistance of trial counsel. Our *de novo* review of the petition shows that it merely offered conclusory statements that trial counsel failed to have any of defendant's witnesses testify at trial when those witnesses could have made a "big empact [*sic*]" on his innocence, and defendant was informed that the witnesses would not be

called "the day of trial in [the] courtroom." However, the petition did not identify the witnesses or explain their potential testimony and did not state where and when defendant informed trial counsel about their existence. Moreover, although defendant attached affidavits from two family members, he did not explain how their testimony would have benefited him or supported his innocence, as both affiants stated that defendant was of good character but admitted that they did not know the circumstance of the offenses in question. Additionally, although the petition alleged that trial counsel told defendant the day of trial that defendant's witnesses would not be presented at trial, this allegation is contradicted by the record. Specifically, trial counsel stated at a pretrial hearing that after a discussion with defendant, "we have decided that we are not going to be calling any character witnesses in this case." See *People v. Torres*, 228 Ill. 2d 382, 394 (2008) (the dismissal of a postconviction petition will be upheld when the allegations are contradicted by the record from the original trial proceedings).

¶ 32    The petition merely contained vague, conclusory statements about counsel's supposed ineffectiveness in failing to present defendant's witnesses without specifying any supporting facts or evidence. See *Allen*, 2015 IL 113135, ¶ 24 (a *pro se* defendant is not excused from providing factual support for his claim in order to show that the petition's allegations are capable of objective or independent corroboration). These conclusory and unsupported statements do not overcome the presumption that trial counsel's strategy was reasonable, or amount to an arguable claim that defendant was prejudiced by counsel's decision not to present these unidentified witnesses at trial. See *People v. Delton*, 227 Ill. 2d 247, 258 (2008) (petition's allegation that counsel was "ineffective for failing to interview all possible witnesses to the incident" without "alleg[ing] that someone actually saw or heard the incident" was "nothing more than a broad

conclusory allegation of ineffective assistance of counsel"); *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 16 ("Broad conclusory allegations of ineffective assistance of counsel are not sufficient to avoid a summary dismissal."). We thus conclude that the instant petition did not raise an arguable claim of ineffective assistance of counsel.

¶ 33    Accordingly, we affirm the circuit court's summary dismissal of the petition.

¶ 34    Affirmed.