RIPPLE, Circuit Judge,
dissenting.
I agree with my colleagues that Mr. McKinley failed to raise his Eighth Amendment claim in state court. See Op. at 911. I disagree, however, that Miller v. Davis, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), provides a basis for relief for Mr. McKinley, that Miller excuses his default, and that Mr. McKinley should have the opportunity to return to the Illinois courts to pursue a third post-conviction petition for relief.
In Miller, the Supreme Court held that “mandatory life without parole for those under the age of 18 at the time of their, crimes violates the Eighth Amendment’s prohibition on ‘cruel and unusual punishments.’ ” 132 S.Ct. at 2460. Although we have not answered the question whether Miller should be applied retroactively to eases on collateral review, we held in Croft v. Williams, 773 F.3d 170, 171 (7th Cir.2014), that, in cases like Mr. McKinley’s where the defendant was sentenced to a discretionary life sentence, “Miller is inapplicable.”
The majority acknowledges Croft, but distinguishes it. According to the majority, Miller did something more than establish a rule that a juvenile cannot be sentenced to a mandatory life sentence; Miller also established that “children are different,” and, in sentencing them, state courts must acknowledge and give credence to this principle. Op. at 910-11. Our decision in Croft, they continue, “did not discuss the ‘children are different’ passage in Miller,” and, therefore, does not bind this panel. Op. at 911.
Even if I could accept this characterization of Croft, the “ ‘children are different’ *915 passage in Miller” does not provide a basis for returning Mr. McKinley to the state courts. As the majority acknowledges, the “children are different” statement in Miller has parallels “in earlier Supreme Court cases, notably in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005),”[1] Op. at 911, and also in Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).[2] “Children are different,” therefore, is not a new rule — either substantive or procedural — that justifies Mr. McKinley’s failure to raise his Eighth Amendment claim in the state courts.
Moreover, Roper was handed down during the pendency of Mr. McKinley’s direct appeal, and Graham was handed down during the pendency of Mr. McKinley’s first petition for post-conviction relief (and prior to filing his motion for leave to file a successive state post-conviction petition). Consequently, the principle that forms the basis of the majority’s decision to return Mr. McKinley to the state courts was available to him during his first, second and third attempts at state-court relief. Mr. McKinley simply failed to invoke that principle.
The majority believes, however, that returning Mr. McKinley to the courts of Illinois is appropriate because those courts “have had no opportunity to consider the bearing of Miller on the appropriateness of reconsidering McKinley’s sentence.” Op. at 915. My colleagues posit that the Illinois courts may be willing to entertain Mr. McKinley’s Eighth Amendment claim because, in People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709, 722 (2014), “the Illinois Supreme Court found that Davis had satisfied this cause and prejudice test for his Miller claim because Miller was unavailable to [Davis] either on direct appeal or in his initial post-conviction proceedings, and the court held that under Illinois law it could be enforced retroactively on collateral review.” Op. at 913. The majority finds one remark in Davis “[particularly important”: “that Miller is retroactive because it changed substantive rather than procedural law.” Id. at 913.
As an initial matter, the Illinois courts have been deprived of this opportunity to consider the “children are different” argument only because Mr. McKinley failed to present it, not because the argument was unavailable to him. Furthermore, Davis provides little basis for concluding that the Illinois courts will look charitably on Mr. McKinley’s late arguments. Davis concerned the sentencing of a juvenile defender to a mandatory sentence of natural life imprisonment. Davis, 6 N.E.3d at 714 (“Because defendant was found guilty of murdering more than one victim, section 5—8—1 (a)(1)(c) ... required the trial court to sentence defendant to a term of natural life imprisonment, for which parole is not available.... ” (emphasis added)). Concluding that the defendant fell within the *916 rule of Miller, the Supreme Court of Illinois went on to conclude that Miller should apply retroactively because it “places a particular class of persons covered by the statute — -juveniles—constitutionally beyond the State’s power to punish with a particular category of punishment— mandatory sentences of natural life without parole.” Id. at 722. Because this new rule was substantive, the court continued, it “constitutes ‘cause’ because it was not available earlier to counsel and constitutes prejudice because it retroactively applies to defendant’s sentencing hearing.” Id. (citation omitted).
The state supreme court, however, also noted the limitation of this substantive rule: “We observe that Miller does not invalidate the penalty of natural life without parole for multiple murderers, only its mandatory imposition on juveniles. A minor may still be sentenced to natural life imprisonment without parole so long as the sentence is at the trial court’s discretion rather than mandatory.” Id. at 723 (second emphasis added) (citation omitted). Therefore, even if there were no procedural impediments to returning Mr. McKinley to state court, nothing in Davis suggests that, once there, Mr. McKinley could obtain the relief he seeks.
Although not directly stating so, today the majority both recognizes a new constitutional right and holds that it is cognizable on habeas review: the right of a juvenile not only to have the trial court explicitly consider age as a mitigating factor in sentencing, but also to have the sentencing court consider specific information in that sentencing process. The majority also supplies the contours for this right. “A competent judicial analysis,” my colleagues instruct, “would require expert psychological analysis” of both the juvenile offender and “his milieu.” Op. at 913 (emphasis added). Sociological considerations also must enter the sentencing court’s analysis; it must consider both whether “other potential murderers [are] likely to be warned off murder upon learning that a 16-year-old kid has been sentenced to life in prison” and whether it “matter[s] greatly” to them “whether a murderer such as McKinley is sentence to 20 years or 100 years.” Id. at 913-14.
The majority’s conception of sentencing for juvenile offenders may be a very salutary one. But it is not our prerogative to establish such standards on habeas review.
I therefore-respectfully dissent.

. See Roper v. Simmons, 543 U.S. 551, 569-574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (discussing "[tjhree general differences between juveniles under 18 and adults” which "render suspect any conclusion that a juvenile falls among the worst offenders” and concluding that '[tjhe differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty despite insufficient culpability’).

. See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2026, 2030, 176 L.Ed.2d 825 (2010) (explaining that “Roper established that because juveniles have lessened culpability they are less deserving of the most severe punishments” and concluding that "the limited culpability of juvenile nonhomicide offenders[] and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual”).