**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190516-U

Order filed April 22, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0516 Circuit No. 94-CF-5040 |
| | ) | |
| GREGORY C. SHAW, | ) ) | Honorable David Martin Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice McDade specially concurred.

_____

**ORDER**

¶ 1      *Held*: The circuit court properly granted the State's motion to dismiss defendant's successive postconviction petition where defendant failed to make a substantial showing of actual innocence.

¶ 2      Defendant, Gregory C. Shaw, appeals the Will County circuit court's second-stage dismissal of his successive postconviction petition. Defendant contends the court erred, as his successive petition made a substantial showing of actual innocence that warranted a third-stage evidentiary hearing. We affirm.

¶ 3                                I. BACKGROUND

¶ 4          The State charged defendant with armed robbery (720 ILCS 5/18-2(a) (West 1996)), felony

murder (*id.* § 9-1(a)(3)), and four counts of first degree murder (*id.* § 9-1(a)(1)). The State charged

codefendant Elton Williams with the same offenses. Defendant and Williams were tried together

but had separate juries.

¶ 5          The evidence at trial showed that an acquaintance gave defendant a ride to a gas station at

approximately 6:30 or 7 p.m. on September 27, 1994, to meet Williams. The acquaintance

observed defendant enter Williams's white car.

¶ 6          Shortly after midnight on September 28, 1994, William Chaney pulled into the parking lot

of his apartment complex and noticed a white car parked nearby with its motor running. When

Chaney exited his car and approached the apartment building, Williams approached Chaney from

behind and robbed him. Chaney only observed Williams and did not see defendant. At

approximately 12:23 a.m., Chaney called 911 and described the white car. Chaney met with an

officer who drove him approximately a half block away from the apartment complex. At that

location, Chaney identified the white car police had stopped as the car he observed prior to the

robbery.

¶ 7          Minutes after Chaney had called 911, Officers Timothy Simenson and Ralph Smith, in

addition to several other officers, stopped a car matching the description given. Officers parked

their squad cars behind the white car and discovered defendant driving. Simenson directed

defendant to walk to the back of the white car toward the squad cars. Defendant walked to the back

of the white car and sat on its trunk. After searching inside the car, Simenson told defendant that

he was going to open the trunk and defendant needed to move. Defendant slid off the trunk but

stayed near the back of the white car. Simenson directed defendant to walk to the squad car behind

2

the white car. Defendant placed his hands on the front hood of Simenson's squad car and bent forward over the squad car at the waist. Smith found defendant's actions "unusual" and told defendant to stand up. When Simenson opened the trunk, Williams shot Simenson twice in the head. The shots fatally wounded Simenson. Following the shooting, defendant was observed "spread eagled" on the hood of Simenson's squad car. Defendant did not inform or indicate to officers that Williams was in the trunk of the white car.

¶ 8    A jury found defendant guilty on all counts, pursuant to a theory of accountability. The court sentenced defendant to death.

¶ 9    Although defendant's jury did not hear the following evidence, as it was presented only to Williams's jury, it is part of the record in defendant's case on appeal. Prior to trial, Williams pled guilty to armed robbery. At his trial, Williams testified that on September 27, 1994, he saw defendant at the liquor store. He and defendant decided to ride around in Williams's car. They stopped at Williams's residence, and Williams engaged in a verbal altercation with his wife over money. Williams was upset and left with defendant. After speaking with defendant, Williams decided to rob someone. Defendant suggested that they obtain a gun. Williams and defendant went to a house Williams did not recognize. Defendant entered the house and returned with a gun. Defendant and Williams purchased cocaine and proceeded to an apartment complex to wait for someone to rob. When they observed Chaney park his car in the lot, Williams exited the driver's seat and robbed Chaney. Defendant took over driving Williams's car and told Williams to get in the trunk because the police would be looking for two individuals. Defendant helped Williams get into the trunk. Williams denied ever discussing with defendant a plan to kill a police officer or anyone who stopped them.

¶ 10     On defendant's direct appeal, the supreme court found the evidence was insufficient to show that defendant aided and abetted Williams before or during the armed robbery and reversed defendant's armed robbery and felony murder convictions. *People v. Shaw*, 186 Ill. 2d 301, 323-25 (1998). The supreme court affirmed defendant's first degree murder convictions, finding convincing evidence to establish defendant's accountability for the offenses. *Id.* at 327, 331, 358. The supreme court remanded the cause for resentencing. *Id.* at 358. On remand, the court sentenced defendant to life imprisonment. On appeal, this court affirmed. *People v. Shaw*, No. 3-02-0034 (unpublished order under Illinois Supreme Court Rule 23).

¶ 11     Defendant filed a postconviction petition as a self-represented litigant, alleging ineffective assistance of trial and appellate counsel. The circuit court dismissed the petition, and we affirmed on appeal. *People v. Shaw*, No. 3-06-0204 (2008) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12     Defendant filed a motion for leave to file a successive postconviction petition alleging a claim of actual innocence. Defendant attached an affidavit from Williams that stated:

"1. I, Elton Williams, being first duly sworn under oath, do hereby swear as follows:

2. On the night of September 28, 1994, I committed a robbery in Crest Hill, Illinois[;]

3. During the robbery, [defendant] was nowhere to be seen and took no active part[;]

4. [Defendant] had no prior knowledge of the robbery or that anyone would be shot on the night of September 28, 1994[;]

5. I, Elton Williams, shot and killed Sgt. Timothy Simenson[;]

4

6. The weapon used in both the robbery and shooting was mine[; and]

7. Before any shots were fired, [defendant] had already surrendered himself to law enforcement officers."

Defendant's motion alleged that Williams's affidavit was newly discovered and also included letters from his postconviction counsel indicating that Williams was "willing to admit to only certain things in an affidavit," that Williams would "admit that [defendant] took no active part in the robbery and were [*sic*] nowhere to be seen, that the weapon used was his, and that [defendant] had no prior knowledge that anyone would be shot," and Williams would not sign an affidavit drafted by defendant but would draft his own.

¶ 13    The State moved to dismiss defendant's motion for leave to file, which the court granted. We affirmed the dismissal on appeal. *People v. Shaw*, 2016 IL App (3d) 140200-U. Defendant filed a petition for leave to appeal with the Illinois Supreme Court. The supreme court denied defendant's petition but directed us to vacate our judgment and reconsider the case in light of *People v. Bailey*, 2017 IL 121450. Upon reconsideration, we affirmed the circuit court's denial of defendant's motion for leave to file a successive postconviction petition. *People v. Shaw*, 2018 IL App (3d) 140200-UB. We found that while the court erred in considering the State's motion to dismiss defendant's motion for leave, a review of defendant's proposed successive petition showed that while Williams's affidavit was newly discovered, it was not so conclusive that it would probably change the result on retrial. *Id.* ¶¶ 22, 28. Specifically, Williams's affidavit only stated that defendant "had no prior knowledge *** that anyone would be shot." *Id.* ¶ 29. We noted that "[t]he affidavit does not state that defendant did not know Williams had a weapon when he hid in the trunk of the car or that defendant did not know that Williams might shoot someone if he was discovered in the trunk." *Id.* We noted that defendant knowingly drove the car with Williams in

5

the trunk and failed to alert police to the presence of Williams in the trunk. *Id.* ¶ 30. Further, we found that defendant's behavior of placing his hands on the hood of Simenson's car and leaning forward, and later laying "spread-eagled" on the car, suggested "that defendant knew that Williams would shoot his weapon upon being discovered by police." *Id.* ¶ 29.

¶ 14    Defendant filed a second motion for leave to file a successive postconviction petition, again alleging a claim of actual innocence. In support, defendant attached a new affidavit from Williams. Williams's new affidavit was substantially the same as his prior affidavit but included that Williams himself "had no thought that anyone would be shot," and

"(5) The victim of the robbery was not shot.

(6) There was no discussion between [Williams] and [defendant] about either the robbery or any unforeseeable event that might have occurred thereafter[;]

***

(8) [Defendant's] actions toward law enforcement officers indicated nothing other than complete and total surrender. His actions would not indicat[e] to any rational person that he had a desire for events to escalate[;]

(9) Being that there were no prior discussions held between [Williams] and [defendant], it's hard to imagine [defendant] 'knowing' that [Williams] would shoot someone. Especially when [Williams] didn't shoot the victim of the robbery and especially because [Williams] didn't know [he] would end up shooting someone[;]

(10) [Defendant] surrendered to law enforcement and expected me to do the same without incident."

Defendant attached his own affidavit alleging that he and Williams did not plan the shooting and that he was unaware that Williams had a gun.

¶ 15    The circuit court granted defendant leave to file, advanced the petition to second-stage proceedings, and appointed counsel to represent defendant. Counsel filed an amended petition, which included an amended affidavit from Williams. Williams's amended affidavit alleged that

> "[defendant] was not at any point in time prior to the robbery or shooting made aware of the fact I possessed a firearm on that day;*** the firearm used in both the robbery and the shooting was mine alone; *** I had given [defendant] absolutely no indication or reason to believe that I was in possession of a firearm***; [defendant] did not possess any firearm whatsoever on the day of these offenses, prior to, during, or immediately after their commission; *** any statements I might have previously made that contradict the above statements were false and only made to lessen or eliminate my responsibility or liability ***; any statement I might have previously made to the effect that [defendant] provided me with the firearm used in these offenses was false, and I *** had learned through my trial counsel that [defendant] may possibly testify against me at my jury trial, so I had decided to falsely testify regarding the firearm being provided to me by [defendant]."

¶ 16    The court granted the State's motion to dismiss the successive petition, finding that the new affidavit was substantially the same as the prior affidavit and did not meet the requirements of newly discovered evidence under a claim of actual innocence.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant argues that the circuit court erred by granting the State's motion to dismiss his successive postconviction petition at the second stage because his petition made a

7

substantial showing of actual innocence. Specifically, the new affidavit submitted by Williams is newly discovered, noncumulative, and of such a conclusive character that it would change the result at trial.

¶ 19        The Post-Conviction Hearing Act (Act) permits a criminal defendant to challenge the proceedings which resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of a single postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 42. A defendant must obtain leave of court to file a successive postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 47; *Robinson*, 2020 IL 123849, ¶ 43; 725 ILCS 5/122-1(f) (West 2018). A defendant may obtain leave by alleging "a fundamental miscarriage of justice based on actual innocence." *Robinson*, 2020 IL 123849, ¶ 42 (citing *People v. Edwards*, 2012 IL 111711, ¶ 23). If the circuit court does not dismiss the successive postconviction petition at the first stage, the petition will proceed to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage, a defendant must make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 20        To warrant third-stage proceedings, a petition alleging actual innocence must present new, material, noncumulative evidence. *People v. Coleman*, 2013 IL 113307, ¶ 84. "Newly discovered evidence is evidence that was discovered after trial that the [defendant] could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. "Evidence is material if it is relevant and probative to the [defendant's] innocence." *Id.* "Noncumulative evidence adds to the information that the fact finder heard at trial." *Id.* "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* In other words, the question is "whether the evidence supporting the

8

postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilty." *Id.* ¶ 48. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* We review the court's second-stage dismissal of a postconviction petition *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 21     Here, defendant brought essentially the same actual innocence claim in his second successive postconviction petition as in his initial successive postconviction petition. The only new pieces of information—that defendant had no knowledge of the gun and no knowledge of Williams's intent to shoot—are facts that would have been available to defendant in his initial successive petition. In a prior appeal, we considered Williams first affidavit that was attached to defendant's initial successive postconviction petition, as newly discovered because defendant would not have known that information at the time of trial due to Williams's fifth amendment right against self-incrimination. See *People v. Parker*, 2012 IL App (1st) 101809, ¶ 83 (because the codefendant's affidavit included statements of self-incrimination, the evidence could not have been discovered sooner through due diligence). However, that rationale does not apply to Williams's second affidavit because Williams waived his fifth amendment right and gave some self-incriminating statements in his first affidavit. See *People v. Davis*, 2014 IL 115595, ¶ 55 ("A defendant is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions.") Thus, this information was not new and could have been discovered earlier through due diligence.

¶ 22     Assuming, *arguendo*, that defendant could not have discovered the evidence earlier and that Williams's new affidavit is relevant and not merely cumulative, we still find that the "new" evidence is not of such a conclusive character as to change the outcome at trial. If a new trial were

9

held, and Williams testified consistent with his affidavit that defendant had no knowledge of the gun, Williams would be subject to impeachment with his prior inconsistent trial testimony indicating that defendant suggested that they procure a gun and directed Williams to a location where they could obtain a gun. See 725 ILCS 5/115-10.1 (West 1996); Ill. R. Evid. 801(d)(1)(A) (eff. Oct. 15, 2015); Ill. R. Evid. 613(b) (eff. Oct. 15, 2015); see also *People v. Morgan*, 212 Ill. 2d 148, 155 (2004) (recantation of testimony is regarded as inherently unreliable).

¶ 23    Moreover, Williams's new affidavit, directly conflicted with defendant's actions and behavior prior to the murder and did not explain away defendant's culpable behavior. The evidence at trial indicated Williams and defendant were in Williams's car before and after the robbery occurred. Defendant's behavior of failing to obey Simenson's orders to stay away from the white car, placing his hands on the hood of the squad car and bending forward, lying "spread eagled" on the hood of the squad car, and failing to alert police to the presence of Williams in the trunk indicated that defendant knew that Williams was in the trunk of his car. Defendant's behavior is inapposite of an individual who was unaware that Williams was armed and dangerous.

¶ 24    Further, though Williams averred that defendant did not know that he intended to shoot an individual, Williams does not and cannot assert that defendant was not present when the shooting took place. The evidence clearly established that defendant acted suspiciously immediately before Simenson was shot and drove the vehicle that concealed Williams in the trunk. The combination of defendant's actions and behavior immediately before the shooting and presence in the vehicle that Williams hid in until Simenson opened the trunk, established defendant's accountability for the murder. See, *e.g.*, *Edwards*, 2012 IL 111711, ¶¶ 39-40 (where the defendant was charged on an accountability theory, an affidavit indicating the defendant had nothing to do with the murder did not establish the defendant's actual innocence where it did not refute the defendant's presence

at the scene of the shooting). Therefore, defendant did not make a substantial showing of actual innocence and the court correctly granted the State's motion to dismiss.

¶ 25                               III. CONCLUSION

¶ 26        The judgment of the circuit court of Will County is affirmed.

¶ 27         Affirmed.

¶ 28        JUSTICE McDADE, specially concurring.

¶ 29        The majority finds that the defendant, Gregory Shaw, failed to make a substantial showing of actual innocence and that the State's motion to dismiss was properly granted. I agree with that conclusion and concur in the judgment.

¶ 30        I write separately, and briefly, to take issue with the majority's finding that "the only new pieces of information—that defendant had no knowledge of the gun and no knowledge of Williams's intent to shoot—are facts that would have been available to defendant in his initial successive petition." Those are allegations that defendant most certainly would have included in the original affidavit, had he been able to do so, because his ignorance, at least of the presence of a gun, would be critically important to his claim of actual innocence. However, Shaw made it clear that Williams refused to sign any affidavit drafted by or for Shaw; rather he would only sign an affidavit that *he* produced. It appears that defendant could only submit what was given to him by Williams and, despite the prohibition of piecemeal evidence, it was not unreasonable for him to hope that the initial petition would prove sufficient. For this reason, I would not agree that this evidence was "available" to Shaw and could have been "discovered" by him sooner through due diligence.

¶ 31        Despite this difference of opinion, I nonetheless agree with the dismissal of the petition for leave to file a second successive postconviction petition. The evidence was clear in the case record

11

that it was defendant who initiated and implemented the securing of the gun to be used in the robbery and the defendant who had to know that, if he was not in possession of it, Williams was.