NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220500-U

NO. 4-22-0500

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DANIEL VALERIO, | ) | No. 04CF2933 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randy Wilt, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding defendant failed to rebut the presumption under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) postconviction counsel provided reasonable assistance in connection with defendant's amended successive postconviction petition.

¶ 2    Following a jury trial, defendant, Daniel Valerio, was convicted of first degree murder (720 ILCS 5/9-l(a)(2) (West 2002)) and sentenced to 55 years in prison. On direct appeal, the appellate court affirmed defendant's conviction but vacated his sentence. *People v. Valerio*, No. 2-07-0676 (May 21, 2009) (unpublished order under Illinois Supreme Court Rule 23). On remand, the trial court resentenced defendant to 50 years. The appellate court affirmed defendant's new 50-year sentence. *People v. Valerio*, No. 2-10-0556 (October 18, 2011) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West

2010)), which the trial court summarily dismissed. The appellate court affirmed. *People v. Valerio*, 2014 IL App (2d) 120935-U. Defendant filed a *pro se* motion for leave to file a successive postconviction petition. The trial court granted the motion, and defendant, through appointed counsel, filed an amended successive petition. Thereafter, the court found defendant failed to establish the cause and prejudice necessary to sustain a successive petition and granted the State's motion to dismiss. Defendant appeals, arguing the court erred in dismissing his petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In September 2004, defendant was charged by indictment with one count of first degree murder knowing such act created a strong probability of death or great bodily harm (720 ILCS 5/9-1(a)(2) (West 2002)) following the fatal shooting of Juan Vargas. Defendant was 17 years old at the time of the offense. A jury convicted defendant of first degree murder and the trial court sentenced him to 30 years' imprisonment for first degree murder plus a 25-year firearm enhancement, for a total of 55 years' imprisonment.

¶ 5            Defendant appealed. The appellate court affirmed defendant's conviction but vacated his sentence and remanded to the trial court for resentencing, finding it improperly considered a factor inherent in the offense by identifying the death of the victim as an aggravating factor. *People v. Valerio*, No. 2-07-0676 (May 21, 2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 6            On remand, the trial court resentenced defendant to 50 years' imprisonment—25 years for first degree murder plus 25 years for the firearm enhancement. Defendant appealed, arguing his new 50-year sentence was excessive given, *inter alia*, his youthfulness at the time he committed the murder. In support of his position, defendant relied on *Roper v. Simmons*, 543 U.S. 551 (2005), in which the United States Supreme Court abolished capital punishment for juveniles,

and an article on the implications of adolescent brain development on the legal culpability of violent juvenile offenders. The appellate court affirmed, concluding the trial court did not abuse its discretion in finding the mitigating factors, including defendant's youth, were offset by the aggravating factors. *People v. Valerio*, No. 2-10-0556 (October 18, 2011) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7    In March 2012, defendant filed a *pro se* postconviction petition under the Act, which the trial court summarily dismissed as frivolous and patently without merit. The appellate court affirmed. *People v. Valerio*, 2014 IL App (2d) 120935-U, ¶¶ 15-17.

¶ 8    In June 2017, defendant filed a *pro se* motion for leave to file a successive postconviction petition. Relying on *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, defendant argued his 50-year sentence constituted a *de facto* life sentence in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). Defendant asserted the absence of these cases at the time he filed his initial *pro se* postconviction petition constituted the "cause" required by section 122-1(f) of the Act for filing a successive petition. See 725 ILCS 5/122-1(f) (West 2016). Defendant also asserted the retroactive operation of *Miller*, as prescribed by *Montgomery v. Louisiana*, 577 U.S. 190 (2016), allowed him to demonstrate the "prejudice" required by section 122-1(f) for a successive petition in that he did not have the opportunity in his first petition to demonstrate his crime was the result of "transient immaturity" as contemplated by these cases.

¶ 9    On September 25, 2017, the trial court granted defendant leave to file a successive postconviction petition. The court held the unavailability of *Miller* and its progeny constituted "good cause" for defendant's failure to raise his proposed claims in his first postconviction

petition. The court also held the requisite "prejudice" was shown given the possibility the sentencing court would have imposed a different sentence had it considered the factors enunciated in these decisions for constitutionally imposing *de facto* life sentences on juvenile offenders. The court appointed counsel to file the successive petition.

¶ 10        In October 2019, defendant, through appointed counsel, filed his amended successive postconviction petition. Defendant argued his sentence constituted a *de facto* life sentence for a juvenile offender in violation of both the eighth amendment and the proportionate penalties clause in that "[s]uch a sentence disregards the possibility of rehabilitation and ignores the evidence of [a] minor's transient immaturity including evidence of the lack of full brain development of a person so young." Defendant therefore sought another resentencing hearing.

¶ 11        The State moved to dismiss the amended successive petition. The State argued (1) defendant forfeited his claims by not presenting them in his initial postconviction petition and (2) defendant's claims were barred by the doctrine of *res judicata*.

¶ 12        In response, defendant argued *res judicata* was irrelevant because the trial court found cause and prejudice in granting him leave to file a successive petition. Moreover, defendant asserted "there can be no doubt" the court did not consider all the pertinent factors in resentencing him to 50 years and the proper remedy would be conducting a resentencing hearing.

¶ 13        On May 27, 2022, the trial court conducted a hearing on the State's motion to dismiss. The State argued the *Miller* decision did not constitute "cause" for raising a proportionate penalties claim in a successive petition. The State argued defendant also could not establish the cause and prejudice necessary to raise the eighth amendment claim. First, the State proposed, "*Miller* shouldn't be in and of itself cause" in that "the defendant had in his possession all of the information he needed to raise an [e]ighth [a]mendment challenge to his sentence at the time of

- 4 -

his initial postconviction petition, and he didn't do it." Second, the State argued defendant cannot establish the requisite prejudice because the sentencing court considered all the pertinent factors under *Miller* and its progeny in resentencing defendant to 50 years' imprisonment. In response to a question from the court, the State acknowledged it was abandoning its forfeiture and *res judicata* arguments.

¶ 14    Postconviction counsel asserted defendant was entitled to another resentencing hearing under *Miller* and its progeny. Postconviction counsel expressed concern over relying only on a sentencing judge's statement of having considered the pertinent factors. Postconviction counsel proposed such a statement "has a certain roteness about it that does not necessarily get into the substance of youthfulness." However, when pressed, postconviction counsel did not point to any particular *Miller* factor the sentencing court failed to consider.

¶ 15    On June 6, 2022, postconviction counsel filed an amended certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which stated, in pertinent part:

> "1. I have consulted with the Petitioner either by mail, telephone, or
>
> in person to ascertain contentions of deprivation of Constitutional rights:
>
> 2. I have examined the transcripts of the two sentencing
>
> proceedings: and
>
> 3. I have made any amendments to the petition filed *pro se* that are
>
> necessary for an adequate presentation of the petitioner's contentions[.]"

¶ 16    On June 7, 2022, the trial court granted the State's amended motion to dismiss. The court held defendant could not establish either cause or prejudice. Addressing defendant's proportionate penalties claim, the court, citing *People v. Dorsey*, 2021 IL 123010, 183 N.E.3d 715, noted "the State accurately points out that [p]roportionate [p]enalt[ies] claims existed well before

*Miller* and that the timing of the *Miller* decision does not serve as 'cause' for failure to raise such claims in an initial Petition." The court also held defendant could not establish the requisite cause in relation to his eighth amendment challenge, as "he had the youth studies at his disposal at resentencing and on appeal" and "could have raised those claims in his initial Post Conviction Petition and did not." The court further held defendant also could not establish the requisite prejudice in relation to his eighth amendment claim, noting the appellate court determined the sentencing court "did properly consider youth and related matters in reducing the sentence from 55 years to 50 years," even in light of "what are now considered the *Miller* factors." Specifically, the court found the following:

"There is a presumption that the [sentencing court] considered all relevant factors in determining a sentence and that presumption will not be overcome without explicit evidence from the record that the [sentencing court] did not consider proper mitigation evidence. ***

Neither by his Amended Successive Post-Conviction Petition, his Response to the State's Motion to Dismiss nor despite a specific request by the Court, has the defendant identified even one *Miller* factor not addressed explicitly or impliedly by [the sentencing court] in resentencing the defendant."

¶ 17    This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant argues his postconviction counsel's Rule 651(c) certificate was deficient. Specifically, defendant contends, in averring postconviction counsel only "examined the transcripts of the two sentencing proceedings," postconviction counsel did not

review other portions of the record and, therefore, his certificate was facially deficient. Alternatively, defendant maintains, even if the certificate was satisfactory, counsel still failed to substantially comply with Rule 651(c) by failing to make the amendments necessary for the adequate presentation of defendant's claims.

¶ 20　　　　　"The Act *** provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Johnson*, 2018 IL 122227, ¶ 14, 123 N.E.3d 1083. As set out in section 122-1(f) of the Act:

> "Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 21　　　　　While "[u]nder the Act, a postconviction proceeding contains three stages," only the first two are pertinent to the instant petition. *Johnson*, 2018 IL 122227, ¶ 14. At the first stage, the trial court may summarily dismiss a postconviction petition as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022)). If the petition is not dismissed, it advances to the second stage. At the second stage, the State may move to dismiss a petition or an amended petition

pending before the court. *Id.* § 122-5. If the motion is denied, or if no motion to dismiss is filed, the State must answer the petition. *Id.* At this stage, the trial court must determine whether the petition and the accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33, 987 N.E.2d 767 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246, 757 N.E.2d 442, 446 (2001)).

¶ 22        If the trial court appoints counsel to represent a defendant at the second stage, counsel must file a certificate of compliance with Rule 651(c) (eff. July 1, 2017). *People v. Cotto*, 2016 IL 119006, ¶ 27, 51 N.E.3d 802. Rule 651(c) requires, for a postconviction proceeding,

> "a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, *has examined the record of the proceedings at the trial*, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." (Emphasis added.) Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 23        "Rule 651(c) does not require, for substantial compliance, that appointed post-conviction counsel examine the entirety of a petitioner's trial proceedings." *People v. Davis*, 156 Ill. 2d 149, 164, 619 N.E.2d 750, 758 (1993). Instead, "[c]onsistent with the purpose of post-conviction proceedings and the requirements of Rule 651(c), *** appointed counsel is required to examine as much of the transcript of proceedings as is necessary to adequately present and support those constitutional claims raised by the petitioner." *Id.* "To require counsel [under Rule 651(c)] to examine portions of the record which have no relevance to petitioner's claims

would be an exercise in futility." *People v. Turner*, 187 Ill. 2d 406, 412, 719 N.E.2d 725, 729 (1999).

¶ 24    "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19, 974 N.E.2d 813. But our supreme court did not "intend to suggest that an attorney's Rule 651(c) certificate is conclusive of compliance and can never be rebutted." *People v. Perkins*, 229 Ill. 2d 34, 52, 890 N.E.2d 398, 408 (2007). It has emphasized its "case law does not treat Rule 651(c) as the exclusive mechanism for ensuring reasonable assistance." *People v. Smith*, 2022 IL 126940, ¶ 25, 210 N.E.3d 1240. We use a "*Strickland*-like analysis" to evaluate a defendant's claim counsel provided unreasonable assistance, examining (1) whether counsel should have presented or amended defendant's claims and (2) whether counsel's failures caused prejudice. *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 59, 61, 84 N.E.3d 527. "To establish the prejudice prong [under *Strickland*], [a] defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Jackson*, 205 Ill. 2d 247, 259, 793 N.E.2d 1, 9 (2001).

¶ 25    A. Rule 651(c) Compliance

¶ 26    This appeal requires us to first assess the sufficiency of postconviction counsel's certificate under Rule 651(c). As this assessment "concerns the proper interpretation of a supreme court rule, our review is *de novo*." *People v. Suarez*, 224 Ill. 2d 37, 41-42, 862 N.E.2d 977, 979 (2007).

¶ 27    Here, postconviction counsel's certificate does not exactly satisfy the specifications of Rule 651(c). Instead of certifying counsel reviewed "the record of the proceedings at the trial" (Ill. S. Ct. R. 651(c) (eff. July 1, 2017), counsel's certificate certifies only he "examined the

transcripts of the two sentencing proceedings." However, as defendant only raises a constitutional claim in relation to his *sentencing* in his amended successive postconviction petition, the transcripts of the two sentencing hearings are all counsel needed to review to "adequately present and support those constitutional claims raised by the petitioner." *Davis*, 156 Ill. 2d at 164. It would not have been necessary for counsel to examine the entirety of the trial proceedings in his preparation of the successive petition. Indeed, requiring his review of the entire common law record under the specific circumstances of this case would be the sort of "exercise in futility" the *Turner* court cautioned against. *Turner*, 187 Ill. 2d at 412. In other words,

> "were we to find counsel's certificate in this case insufficient to pass muster under Rule 651(c), we would be hard-pressed to conceive of a certificate that would demonstrate counsel's compliance, short of one that exactly mirrors the language of the rule. However, our supreme court has never required strict compliance with Rule 651(c)." *People v. Richardson*, 382 Ill. App. 3d 248, 257, 888 N.E.2d 553, 561 (2008).

¶ 28    We find postconviction counsel's certificate substantially complies with Rule 651(c). Having done so, a rebuttable presumption counsel provided reasonable assistance was established. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 29                                   B. Reasonable Assistance

¶ 30    Having found a rebuttable presumption his counsel provided reasonable assistance, we next address whether defendant successfully rebutted that presumption. We review *de novo* whether postconviction counsel provided reasonable assistance. *Suarez*, 224 Ill. 2d at 42.

¶ 31    Defendant argues postconviction counsel's failure to examine the entirety of the common law record resulted in unfamiliarity with "the dates of the previous filings" necessary to

explain the unavailability of *Miller* and progeny. According to defendant, that failure led postconviction counsel to concede the absence of "cause" for why the eighth amendment claim was not raised in the initial postconviction petition. Defendant contends his postconviction counsel also conceded the inability to establish prejudice, even though "[a] review of the resentencing transcript shows that the trial court did not properly consider several of the *Miller* factors in 2010." We disagree.

¶ 32    To the extent *Miller*'s new substantive rule constitutes cause in relation to an eighth amendment claim because it was not available earlier to counsel (*People v. Davis*, 2014 IL 115595, ¶ 42, 6 N.E.3d 709), that rule is limited to a *prima facie* finding of cause in the context of determining whether to grant leave to file a successive postconviction petition, which the trial court here granted. See, *e.g.*, *People v. Lusby*, 2020 IL 124046, ¶ 30, 182 N.E.3d 563 (citing *Davis*, 2014 IL 115595, ¶ 42 ("The State concedes that the defendant's pleadings made a *prima facie* showing of cause.")). But the court here also concluded defendant could not establish prejudice in that defendant never identified even one *Miller* factor not addressed explicitly or impliedly by the sentencing court during resentencing. Indeed, our review of the record reveals the sentencing court's remarks adequately addressed the pertinent *Miller* factors.

¶ 33    The considerations which would eventually be known as the "*Miller* factors" include the following:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have

affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation. [Citation.]" (Internal quotation marks omitted.) *Id.* ¶ 34.

¶ 34    As for the chronological age component of the first factor, the sentencing court at resentencing stated:

"[Defendant] was 17 years old at the time. And I am taking that into consideration, [Assistant Public Defender] Herrmann, because he was a very young man. *** And the fact that he was youthful I am taking into consideration, and I think that is a matter that is in his behalf, his relative youthfulness in this case."

The court also addressed the immaturity, impetuosity, and failure to appreciate risks and consequences component of the first factor as follows:

"In this particular case just let me say that Juan Vargas was, in my opinion, and based upon the evidence that you have seen here, an innocent victim. He was driving a car with his mother. He was minding his own business. He was running an errand. ***

    ***

    *** [defendant] was at the time completely out of control. He was a menace to our society which I think was his nickname. And, in fact, he lived up to his nickname. Because according to the evidence I've received here, he was heavily involved in gangs. First, the Surenos and then later the [Latin] Counts. Because apparently he thought the Counts were tougher and

more violent and better suited to his personality and temperament that he had at that time."

¶ 35        The sentencing court addressed the second factor through the following statements referring to the implications the ongoing gang rivalry had on defendant's family and home environment before the murder of Juan Vargas:

> "We've heard evidence here today about, you know, gang wars and gang rivalries particularly between the Counts and the [Latin] Kings that was going on at that time. And I think [defendant] was right in the middle of that. According to the evidence received, he was a Count at the time. The Kings were harassing his household. He was retaliating driving around in cars, going into Kings' territory, shooting them up. First, you know, I think clearly at the Aragona Club and then obviously later in this apparent retaliation of Juan Vargas driving by slowly his family's house, going out and chasing after him with a weapon."

¶ 36        The sentencing court addressed the third factor through the preceding statements, emphasizing defendant shot Juan Vargas and how the incident was in retaliation for previous incidents of intimidation at his home by rival gang members. (Testimony at the resentencing hearing revealed defendant's brother was also involved in gang activity in Rockford.)

¶ 37        As for the fourth factor, not only was there no evidence presented at the sentencing hearing suggesting that defendant was unable to deal with police officers, there was evidence indicating defendant had a good relationship with the police. Sergeant Carla Redd testified she responded to "various calls" placed from defendant's house over the course of two or three years,

developed a "fairly trustworthy relationship" with defendant, and found him "cooperative and forthcoming" when she would go to his house.

¶ 38    Finally, the sentencing court addressed the fifth factor through the following statements:

> "So, you know, I do believe [defendant] when he stood up here today and told me that he has changed, and his mother has said that, that he has had a lot of time to think about this. Well, he does have time. That's basically all he's got now is time to sit in jail and meditate about his past crimes and his past deeds. And maybe he has changed. Certainly his statement indicates that he has."

¶ 39    In sum, notwithstanding the unavailability of *Miller* and its progeny at the time of defendant's resentencing, the sentencing court considered matters identifiable as the *Miller* factors. Further, defendant cannot establish any *Miller* factors the court did not consider. Defendant has failed to establish the prejudice necessary under section 122-1(f) of the Act to proceed with his eighth amendment claim in a successive postconviction proceeding. See *Lusby*, 2020 IL 124046, ¶ 52 (noting the defendant could not establish prejudice because the sentence "passes constitutional muster under *Miller*"). Indeed, postconviction counsel's review of the entire common law record would not have created a reasonable probability defendant's successive postconviction petition would have been granted. *Jackson*, 205 Ill. 2d at 259.

¶ 40    Moreover, as the trial court noted, the State "accurately point[ed] out that [p]roportionate [p]enalt[ies] claims existed well before *Miller* and that the timing of the *Miller* decision does not serve as 'cause' for failure to raise such claims in an initial Petition." We agree. "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide

- 14 -

cause for a defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 74. The unavailability of *Miller* at the time of a particular defendant's sentencing "at best deprive[s] [the] defendant of some helpful support for his state constitutional law claim, which is insufficient to establish cause." (Internal quotation marks omitted.) *Id.* As *Miller* does not, as a matter of law, constitute the requisite cause for advancing a proportionate penalties clause claim for the first time in a successive postconviction petition, defendant's argument his postconviction counsel could have amended this claim through a more thorough examination of the record is without merit.

¶ 41　　　　　Therefore, defendant cannot rebut the presumption under Rule 651(c) of his postconviction counsel providing reasonable assistance.

¶ 42　　　　　　　　　　　　III. CONCLUSION

¶ 43　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 44　　　　　Affirmed.